**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| Courtenay M. Miner, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:21-CV-00107 |
| | : | |
| v. | : | |
| | : | |
| Specialized Loan Servicing, LLC, et. al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

BALLARD SPAHR LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

*Attorneys for Specialized Loan Servicing, LLC*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 1

III.   STANDARD OF REVIEW ................................................................................ 4

IV.   ARGUMENT ....................................................................................................... 5

     A.      The Voluntary Payment Doctrine Bars and Requires Dismissal of all of Plaintiff's Claims. ............................................................................................ 5

     B.      Wisconsin's Economic Loss Doctrine Bars Plaintiff's Tort Claims. .................... 7

     C.      The Amended Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress. ....................................................................................... 9

         1.      Plaintiff Fails to Allege SLS Intended to Cause Emotional Harm. ........... 9

         2.      SLS's Conduct was not Extreme and Outrageous. ................................. 11

         3.      Plaintiff Fails to Allege He Suffered an Extreme Disabling Emotional Response. ................................................................................. 14

         4.      Plaintiff Fails to Allege Legal Causation. ................................................. 15

     D.      The Amended Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress. ....................................................................................... 18

         1.      Plaintiff Fails to Allege He Suffered Severe Emotional Distress. ........... 19

         2.      SLS Does Not Owe Plaintiff a Duty of Care. .......................................... 19

     E.      Plaintiff Fails to State a Claim for Fraudulent Misrepresentation. ...................... 21

     F.      The Amended Complaint Fails to State a Claim for Wrongful Death. ................. 22

         1.      Plaintiff Fails to Plead an Underlying Claim. ........................................... 22

         2.      Plaintiff's Conclusory Statements and Legal Conclusions are Insufficient to State a Claim for Wrongful Death and Defy Common Sense. ...................................................................................... 23

         3.      Plaintiff Failed to Join an Indispensable Party. ....................................... 24

     G.      Plaintiff's Breach of Contract Claim Fails Because Plaintiff Fails to Allege the Existence of an Enforceable Contract. ............................................. 25

     H.      Plaintiff Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing. .................................................................................................... 27

     I.      Plaintiff Fails to State a Claim for a Violation of the Wisconsin Deceptive Trade Practices Act. ....................................................................................... 28

     J.      Plaintiff's Truth In Lending Claim Fails as a Matter of Law. ............................. 29

     K.      Plaintiff's Wisconsin Statutes § 224.71 Claim Should be Dismissed. ................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alsteen v. Gehl*,
21 Wis. 2d 349, 124 N.W.2d 312 (1963)..............................................................12, 14, 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................4, 10, 23, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................... *passim*

*Below v. Norton*,
2008 WI 77, 310 Wis. 2d 713, 751 N.W.2d 351 .......................................................8

*Bernstein v. Extendicare Health Servs., Inc.*,
607 F. Supp. 2d 1027 (D. Minn. 2009).......................................................................5

*Bowen v. Am. Family Ins. Co.*,
2012 WI App 29, 340 Wis. 2d 232, 811 N.W.2d 887 .....................................22, 24

*Bowen v. Lumbermens Mut. Cas. Co.*,
183 Wis. 2d 627, 517 N.W.2d 432 (1994)........................................15, 18, 19, 20

*Christ v. Exxon Mobil Corp.*,
2015 WI 58, 362 Wis. 2d 668, 866 N.W.2d 602 ..................................................23

*Dawoudi v. Nationstar Mortg. LLC.*,
448 F. Supp. 3d 918 (N.D. Ill. 2020) .....................................................................29

*Digicorp, Inc. v. Ameritech Corp.*,
2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652 .......................................................7

*Dufour v. Progressive Classic Ins. Co.*,
2016 WI 59, 370 Wis. 2d 313, 881 N.W.2d 678 ..................................................27

*EEOC v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) .....................................................................................4

*Foseid v. State Bank*,
197 Wis. 2d 772, 541 N.W.2d 203 (Ct. App. 1995) .............................................27

*Fricano v. Bank of Amer. N.A.*,
2016 WI App. 11, 875 N.W.2d 143 (Wis. App. 2016)..........................................28

*Glick v. Koenig*,
766 F.2d 265 (7th Cir. 1985) .................................................................................5

*Golden Dipt. Co., Div. of DCA Food Industries, Inc. v. Systems Engineering &*
*Mfg. Co.*,
465 F.2d 215 (7th Cir. 1972) ...............................................................................27

*Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*,
213 F.3d 960 (7th Cir. 2000) ...............................................................................28

*Hukic v. Aurora Loan Servs.*,
588 F.3d 420 (7th Cir. 2009) ...............................................................................12

*Kaloti Enter., Inc. v. Kellogg Sales Co.*,
2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205 ...............................................21

*Kleinke v. Farmers Coop. Supply & Shipping*,
202 Wis. 2d 138, 549 N.W.2d 714 (1996).................................................15, 16, 17

*Kochel v. Hartford Acci. & Indem. Co.*,
66 Wis. 2d 405, 225 N.W.2d 604 (1975).............................................................24

*La Crosse Cty. v. Trinity Indus.*,
No. 15-cv-117-jdp, 2016 U.S. Dist. LEXIS 43208 (W.D. Wis. Mar. 31, 2016) ......................7

*Lenczner v. Wells Fargo, N.A.*,
No. 14-cv-691-wmc, 2017 U.S. Dist. LEXIS 82713 (W.D. Wis. May 31,
2017) ....................................................................................................................12

*McKissick v. Schroeder*,
70 Wis. 2d 825, 235 N.W.2d 686 (Wis. 1975) ....................................................11

*Mescall v. Burrus*,
603 F.2d 1266 (7th Cir. 1979) ...................................................................4, 10, 30

*Metropolitan Ventures, LLC v. GEA Assocs.*,
2006 WI 71, 291 Wis. 2d 393, 717 N.W.2d 58 ...................................................28

*Nelson v. Monroe Reg'l Med. Ctr.*,
925 F.2d 1555 (7th Cir. 1991) .............................................................................11

*O'Boyle v. Real Time Resolutions, Inc.*,
910 F.3d 338 (7th Cir. 2018) .................................................................................5

*Oxxford Clothes XX v. Expeditors Int'l.*,
127 F.3d 574 (7th Cir. 1997) .................................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ..................................................................21

*Putnam v. Time Warner Cable of Southeastern Wis. P'Ship*,
255 Wis. 2d 447, 649 N.W.2d 626 (Wis. 2002) ......................................5, 6

*Rabideau v. City of Racine*,
2001 WI 57, 243 Wis. 2d 486, 627 N.W.2d 795 ....................9, 10, 14, 15

*Scarpaci v. Milwaukee Cty.*,
96 Wis. 2d 663, 292 N.W.2d 816 (1980) ................................................11

*Tang v. C.A.R.S. Prot. Plus, Inc.*,
2007 WI App 134, 301 Wis. 2d 752, 734 N.W.2d 169 .........................27

*Taylor v. JPMorgan Chase Bank, N.A.*,
958 F.3d 556 (7th Cir. 2020) ..................................................................12

*Tietjen v. Ninneman*,
Case No. 16-cv-1542, 2017 U.S. Dist. LEXIS 222308 (E.D. Wis. Sept. 29,
2017) ........................................................................................................25

*Tietsworth v. Harley-Davidson, Inc.*,
2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 ......................................7

*United States v. Shah*,
193 F. Supp. 2d 1091 (E.D. Wis. 2002) ..................................................25

*Webb v. Frawley*,
906 F.3d 569 (7th Cir. 2018) ..................................................................21

*Woltring v. Specialized Loan Servicing LLC*.
56 F. Supp. 3d 947 (E.D. Wis. 2014) ......................................................13

*Wyand-Williams v. St. Norbert Coll., Inc.*,
2013 WI App 30, 346 Wis. 2d 280, 827 N.W.2d 929 .........................11

*Zimmerman v. Logemann*,
No. 09-cv-210, 2011 U.S. Dist. LEXIS 52354 (W.D. Wis. Mar. 17, 2011) ..........................28

**Statutes**

15 U.S.C. §1639f(a) ..................................................................................29

15 U.S.C. § 1640(a) ..................................................................................29

15 U.S.C. § 1640(e) ..................................................................................29

FDCPA ..................................................................................................5, 12

Truth in Lending Act ...................................................................................................................29

Wis. Stat. § 100.18(1) ................................................................................................................28

Wis. Stat. §§ 224.71–224.82 ......................................................................................................29

Wis. Stat. § 895.03 .....................................................................................................................22

Wisconsin Deceptive Trade Practices Act ................................................................................28

Wisconsin Statute section 895.04(2).........................................................................................24

Wisconsin Statutes § 224.71 .....................................................................................................29

**Other Authorities**

12 C.F.R. §§ 1024.39-1024.41...................................................................................................17

12 C.F.R. § 1026.36(c)(1)(i) ......................................................................................................29

12 C.F.R. § 1026.41 ...................................................................................................................17

(available at: https://www.apa.org/topics/stress/holiday-money)................................................17

Fed. R. Civ. P. 8(a)(2).................................................................................................................4

Fed. R. Civ. P. 9(b) ....................................................................................................................21

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 4, 30

Press Release, Mortgage Bankers Association, Mortgage Delinquencies Down in
    1st Quarter of 2018 (May 16, 2018) (available at: https://www.mba.org/2018-
    press-releases/may/mortgage-delinquencies-down-in-1st-quarter-of-2018) ...........................17

## I. INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Specialized Loan Servicing, LLC ("SLS") hereby moves this Court to dismiss with prejudice each of the claims asserted against SLS by Plaintiff Courtenay M. Miner ("Plaintiff"). Plaintiff's claims against SLS fail as a matter of law because the voluntary payment doctrine bars all of Plaintiff's claims and Wisconsin's broad articulation and application of the economic loss doctrine bars all of Plaintiff's tort claims. The core of Plaintiff's Amended Complaint is an alleged breach of contract and under Wisconsin law, Plaintiff cannot maintain tort claims premised upon the same conduct as his contract claims nor can he recover punitive damages for an alleged breach of contract. Additionally, each of Plaintiff's claims individually fail for the reasons described below. Therefore, SLS requests this Court enter an order dismissing all claims with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

Plaintiff Courtenay M. Miner ("Plaintiff") initiated this action on January 25, 2021 by filing a complaint (the "Complaint") asserting claims against SLS, Shellpoint Mortgage Servicing ("Shellpoint"), and Johnson, Blumberg & Associates, LLC ("Johnson Blumberg"). Plaintiff filed an amended complaint (the "Amended Complaint") on June 23, 2021. For purposes of this motion only, SLS assumes the truth of all allegations in the Amended Complaint.

SLS serviced Plaintiff's mortgage from January 9, 2018 until servicing transferred to Shellpoint on June 7, 2019. Am. Compl. ¶¶ 15, 17, 47. At the time SLS began servicing Plaintiff's loan, the loan was in default. *Id.* ¶ 17. Plaintiff alleges that SLS thereafter initiated collection efforts to collect the delinquent payments, by allegedly placing "daily harassing collection calls to Tiffany and send[ing] excessive written correspondence[] to the Miners demanding payment to

cure the default on the subject loan." *Id.* ¶¶ 18-19. Plaintiff admits that his mortgage payments were two months delinquent by April 2018. Am. Compl. ¶¶ 22-23.

Plaintiff asserts that on January 9, 2019, SLS sent the Miners correspondence offering a loan modification. *Id.* ¶ 24. This letter stated, in part:

> Modify your mortgage. You are approved to enter into a trial period plan. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand the steps you need to take to successfully complete the trial period plan and permanently modify your mortgage payments.
>
> . . .
>
> To accept this offer, you must make the first monthly "trial period payment" by the date shown below. To be approved for a permanent modification, you must make the following trial period payments in a timely manner . . . (emphasis added)
>
> . . .
>
> After you make all trial period payments in a timely manner and submit all required documents, your mortgage will be permanently modified as described herein. (emphasis added)

Am. Compl. ¶ 26. Plaintiff alleges that the Miners made trial period payments of $704.75 in each of February, March, and April of 2019. *Id.* ¶¶ 27-29. Plaintiff asserts that SLS did not properly apply the trial payments as required by the terms of the loan and mortgage. *Id.* ¶ 32. After the Miners purportedly made the three trial payments, a SLS representative allegedly advised Ms. Miner that SLS would mail documents to memorialize a permanent loan modification. *Id.* ¶ 31. Thereafter, SLS allegedly mailed a notice of default on May 12, 2019 and a mortgage statement noting a default of $5,329.64 on May 20, 2019. Plaintiff alleges that Ms. Miner spoke with an SLS representative on May 22, 2019 to "inquire about the permanent loan modification and to express her concerns regarding the erroneous default notices." *Id.* ¶ 35. During this call, SLS allegedly advised Ms. Miner that SLS improperly applied the trial plan payments and that SLS would honor the loan modification. *Id.* ¶ 41. On May 29, 2019, Plaintiff reportedly received correspondence

from Shellpoint stating that it would be the new servicer for the subject loan effective June 7, 2019. *Id.* ¶ 42.

Plaintiff asserts that Ms. Miner made daily calls to SLS "in an attempt to obtain the permanent loan modification documentation prior to the imminent servicing charge" and a SLS representative assured Ms. Miner on June 6, 2019 that the subject loan was modified and that Shellpoint would honor the loan modification. *Id.* ¶¶ 44-45. Plaintiff alleges that SLS did not notify Shellpoint of the permanent loan modification and that once Shellpoint began servicing the loan, Shellpoint treated the loan as in default. *Id.* ¶¶ 49, 52. Plaintiff asserts that a Shellpoint representative advised Ms. Miner that Shellpoint would honor the loan modification and that Shellpoint was working with SLS to memorialize the modification. *Id.* ¶ 57.

The remainder of Plaintiff's allegations concern the actions of Shellpoint and Johnson Blumberg, not SLS. Plaintiff asserts that Shellpoint sent the Miners documentation to finalize the loan modification on September 4, 2019, that the Miners executed the agreement on September 17, 2019, and that Shellpoint refused to counter-sign the agreement because the loan was in default. *Id.* ¶¶ 73-77. Plaintiff claims that the reason the subject loan was in default was due to Shellpoint's refusal to accept payments from the Miners. *Id.* ¶ 78. On November 27, 2019, Johnson Blumberg filed a foreclosure action on behalf of 1900 Capital. *Id.* ¶ 87. Plaintiff alleges that Ms. Miner died from a heart attack on January 28, 2020. *Id.* ¶ 94. Plaintiff asserts that he paid off the loan, including allegedly erroneous fees and charges, in April of 2020. *Id.* ¶ 105. Plaintiff asserts that "[a]s a result of Defendants' collective conduct, the Miners suffered agonizing emotional distress, depression, mental anguish, and anxiety" and "caused the Miners to be perpetually stressed, irritable, and aggravated, thus adversely affecting the Miners' day-to-day relations with each other." *Id.* ¶¶ 113, 120.

## III.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss a plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is afforded "fair notice" of the claim and the grounds upon which it is based. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, it is not sufficient for the complaint to simply provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor can a plaintiff rely on "conclusory statements" or legal conclusions, which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979) ("In giving the pleadings a liberal construction, however, we are not required to accept legal conclusions either alleged or inferred from the pleaded facts."). Rather, the pleading must set forth factual allegations that "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). That is, "it is not enough for a complaint to avoid foreclosing possible cases for relief; it must actually suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 561–62).

A motion to dismiss should be granted where a complaint fails to allege facts to support each of the requisite elements of a claim, or where the facts alleged raise only the "sheer possibility" of misconduct. *Iqbal*, 556 U.S. at 678. "Unless it is certain from the face of the

complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) (citations omitted). However, "the liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures." *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir. 1985). Indeed, claims should be dismissed with prejudice if the plaintiff's allegations simply "cannot serve as the basis for a claim under any of the consumer protection statutes upon which Plaintiff relies." *Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) (dismissing claims with prejudice because the plaintiff "failed to identify any solid ground on which the Plaintiff could stand"); *see also O'Boyle*, 910 F.3d at 347 (Complaint properly dismissed with prejudice where "no proposed amendment pushes [Plaintiff's] original [FDCPA] claim into the realm of possibility"). For the reasons discussed below, dismissal with prejudice is warranted in this case.

## IV. ARGUMENT

### A. The Voluntary Payment Doctrine Bars and Requires Dismissal of all of Plaintiff's Claims.

Under the voluntary payment doctrine, a party who voluntarily remits payment for a debt without objecting either before or at the time of payment is later barred from challenging the validity or legality of that debt. *See Putnam v. Time Warner Cable of Southeastern Wis. P'Ship*, 255 Wis. 2d 447, ¶ 13, 649 N.W.2d 626, 631 (Wis. 2002) (citing 66 Am. Jur. 2d Restitution and Implied Contracts, § 108 (2001) ("The rule is well settled that a person cannot recover money that he or she has voluntarily paid with full knowledge of all of the facts and without fraud, duress, or extortion in some form, and that no action will lie to recover the voluntary payment.").

Here, Plaintiff's claims arise from alleged wrongful conduct from SLS in failing to implement the Loan Modification Agreement. *See generally* Am. Compl. Plaintiff admits that he

paid off the loan in full that was allegedly the subject of the Loan Modification Agreement, including "erroneous fees and charges, including attorney's fees and costs associated with the frivolous foreclose case." Am. Compl. ¶ 104. Plaintiff does not allege that he provided notice of his current objections to SLS on or before he paid off the underlying loan, and therefore the voluntary payment doctrine now bars his claims. Plaintiff's Amended Complaint includes the new allegation that the check he wrote to pay off the loan included a note of "under protest" in the "Memo" box. *See id.* ¶ 105, Ex. A. But this is insufficient to fulfil the policy objective behind the doctrine laid out by the Wisconsin Supreme Court. In *Putnam*, the lead case on this area of law in Wisconsin, the Court wrote that there are two justifications for the voluntary payment doctrine. 255 Wis. 2d 447, ¶ 15 ("First, the doctrine allows entities that receive payment for services to rely upon these funds and to use them unfettered in future activities. Second, the doctrine operates as a means to settle disputes without litigation by requiring the party contesting the payment to notify the payee of its concerns.") (citation omitted). It is this second reason that is relevant here. Plaintiff may have written the term "under protest" on the check that he submitted, but that does nothing to advance the policy goal of allowing the parties to settle the matter without litigation by giving the payee notice of the reason for the dispute. Simply writing "under protest" on the check did nothing to give notice about the nature or validity of Plaintiff's claims to anyone, and did not create any opportunity for the parties to avoid the instant litigation. And indeed, many other jurisdictions reject such notations as barring application of the voluntary payment doctrine for this very reason. *See, e.g.*, *Huch v. Charter Communs.*, Inc., 290 S.W.3d 721, 726 (Mo. 2009) ("The voluntary payment doctrine 'is well established, both in England and in this country, [and the doctrine provides] that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, *though the payment is made without*

*a sufficient consideration, and under protest.*'") (emphasis added) (quoting *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 812 (Mo. App. 1969)). Therefore, this Court should find that the note of "under protest" is not sufficient to bar the application of the voluntary payment doctrine.

Finally, Plaintiff has failed to properly allege that he was under duress at the time that he paid off the underlying loan because he still had a "feasible legal remedy" to avoid foreclosure by responding to the complaint in the foreclosure case. *See Oxxford Clothes XX v. Expeditors Int'l.*, 127 F.3d 574, 579 (7th Cir. 1997) ("The hallmark of duress or exertion is that the victim has no feasible legal remedy."). Therefore, this doctrine conclusively bars all of Plaintiff's claims.

### B. Wisconsin's Economic Loss Doctrine Bars Plaintiff's Tort Claims.

Counts six (emotional distress), seven (fraudulent misrepresentation), and ten (wrongful death) of Plaintiff's Amended Complaint are barred by the economic loss doctrine. The economic loss doctrine precludes "contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶23, 270 Wis. 2d 146, 162, 677 N.W.2d 233, 241*; see also La Crosse Cty. v. Trinity Indus.*, No. 15-cv-117-jdp, 2016 U.S. Dist. LEXIS 43208, at *15 (W.D. Wis. Mar. 31, 2016) ("In Wisconsin, the economic loss doctrine prevents a plaintiff from claiming tort damages … for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties."). The purpose of the economic loss doctrine is to preserve the "fundamental distinction between tort law and contract law; protect commercial parties' freedom to allocate economic risk by contract; and encourage the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶35, 262 Wis. 2d 32, 47, 662 N.W.2d 652, 659. Under the economic loss doctrine, contract law provides the exclusive remedy for economic losses arising from a contract, unless one of the limited exceptions applies. *Id*. at ¶¶34–35.

The core of Plaintiff's Amended Complaint is whether one or more of the Defendants improperly foreclosed upon his property in violation of the contracts that set forth the parties' obligations to each other. Indeed, Plaintiff asserts that SLS offered him a loan modification and that Plaintiff accepted the offer by tendering payment, creating a contract (the "Modification Agreement") between SLS and Plaintiff. Am. Compl. ¶ 135. Plaintiff further alleges that SLS breached this contract, damaging Plaintiff. *Id.* ¶¶ 141. Evidence produced in the course of discovery on Plaintiff's non-tort claims will determine whether Plaintiff was in default and whether one or more of the Defendants had a right to foreclose upon the property.

Whether the economic loss doctrine applies to a set of alleged facts is a question of law. *Below v. Norton*, 2008 WI 77, ¶19, 310 Wis. 2d 713, 725, 751 N.W.2d 351, 357. Here, the facts alleged in the Amended Complaint establish that the economic loss doctrine applies because the allegations supporting Plaintiff's tort claims are simply a restatement of those allegations supporting his breach of contract claim.

| Contract Allegations | Tort Allegations |
| --- | --- |
| Defendants breached the contract by "not honoring the Modification Agreement." Am. Compl ¶ 141(b). | "[T]he egregious conduct of…refusing to honor the Modification Agreement…results in an extreme disabling emotional response." Am. Compl. ¶ 196 (IIED/NEID); *see e.g.*, ¶ 205 (Fraudulent Misrepresentation), ¶¶ 263, 266 (Wrongful Death). |
| Defendants breached the contract by "repeatedly deeming the subject loan in default…." Am. Compl. ¶ 141(d). | Defendants "continued to deem the subject loan in default…." Am. Compl. ¶ 205 (Fraudulent Misrepresentation) |
| Defendants breached the contract by "harassing the Miners with never-ending default notices and threats of foreclosure." Am. Compl. ¶ 141(e). | "Defendants bludgeoned the Miners with never-ending default notices and ultimately the filing of the foreclosure case." Am. Compl. ¶ 264 (Wrongful Death). |
| Defendants breached the contract by "filing a wrongful foreclosure." Am. Compl. ¶ 141(m). | Defendants "filed baseless foreclosure proceedings against the Miners and the subject property." Am. Compl. ¶ 205 (Fraudulent Misrepresentation) *see e.g.*, Am. |

| | Compl. ¶ 196 (IIED/NEID), Am. Compl. ¶ 264 (Wrongful Death) |
|---|---|

All of Plaintiff's tort allegations boil down to a claim for breach of the alleged Modification Agreement and thus should be dismissed pursuant to the economic loss doctrine.

### C. The Amended Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress.

This Court should dismiss count six of the Amended Complaint because Plaintiff's allegations are merely a formulaic recitation of the elements of intentional infliction of emotional distress. *See Twombly*, 550 U.S. at 555. To allege a claim for intentional infliction of emotional distress against SLS, Plaintiff's allegations must support the inference that (1) SLS's conduct was intended to cause emotional harm to Plaintiff, (2) SLS's conduct was extreme and outrageous, (3) SLS's conduct was a cause-in-fact of Plaintiff's emotional harm, and (4) Plaintiff suffered an extreme disabling emotional response to the SLS's conduct. *See Rabideau v. City of Racine*, 2001 WI 57, ¶33, 243 Wis. 2d 486, 501, 627 N.W.2d 795, 803. For the reasons discussed below, Plaintiff's Amended Complaint fails to state a claim for intentional infliction of emotional distress.

#### 1. Plaintiff Fails to Allege SLS Intended to Cause Emotional Harm.

This Court should dismiss count six because Plaintiff does not make a plausible allegation that SLS intended to cause Plaintiff emotional distress, nor could it. *See Twombly*, 550 U.S. at 555, 570 (holding that the Amended Complaint must set forth factual allegations that "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face"). To support an inference that SLS's conduct was intended to cause emotional distress, "the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress." *Rabideau*, 2001 WI 57, ¶36.

The Amended Complaint relies on conclusory allegations: "There is no question that the conduct was intentioned to cause emotional distress. Specifically, the egregious conduct of stealing the Miners' money, refusing to honor the Modification Agreement, and throwing the Miners into foreclosure naturally results in an extreme disabling response by Plaintiff," Am. Compl. ¶ 196, and that Defendants "knew that [their] conduct towards the Miners would inflict severe emotional distress on the Miners" *id.* ¶ 198. Even if these allegations were true, and they are not, "[t]here must be something more than a showing that the defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in <u>for the purpose of causing emotional distress</u>." *See Rabideau*, 2001 WI 57, ¶36 (emphasis added) (Granting summary judgment where there was no material issue of fact that suggested Defendant shot Plaintiff's dog for the purpose of causing Plaintiff emotional harm).

Here, there is no allegation, nor could Plaintiff amend to add any plausible allegation, that SLS acted for the purpose of causing Plaintiff emotional harm. *Rabideau* definitively establishes that knowledge that emotional distress would result from conduct does not constitute "intent" to cause emotional distress. *See id.* Plaintiff's assertion that Defendants' "conduct was intentioned to cause emotional distress" is a bare legal conclusion and is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Mescall*, 603 F.2d at 1269 ("In giving the pleadings a liberal construction, however, we are not required to accept legal conclusions either alleged or inferred from the pleaded facts.").

Plaintiff alleges that the subject loan was already in default when SLS acquired servicing rights and that SLS began collection efforts thereafter. Am. Compl. ¶¶ 17-18. Plaintiff alleges that non-party Tiffany Miner had telephonic and email communications with SLS regarding the subject loan, collections, default, and the alleged loan modification offer. *Id.* ¶¶ 19-20, 30-31, 35-41, 44-

46, 60. Plaintiff, on the other hand, only asserts that he received "excessive written correspondence" from SLS. *Id.* ¶ 19. Plaintiff does not allege that SLS foreclosed on the subject property nor does he allege that SLS contacted Plaintiff or Ms. Miner after June 2019. Nevertheless, Plaintiff asserts that "he suffered agonizing emotional distress, depression, mental anguish, and anxiety." *Id.* ¶ 113. The only allegation that Plaintiff made about <u>his</u> own interactions with SLS is that SLS sent him "excessive written correspondence." *Id.* ¶ 19. After Plaintiff admittedly defaulted on his loan, *id.* ¶ 17, SLS had a legal right to contact the debtors to collect the debt. None of Plaintiff's allegations support an inference that SLS engaged in any actions for the purpose of causing Plaintiff emotional distress.

### 2. SLS's Conduct was not Extreme and Outrageous.

Even if all of Plaintiff's allegations were true, and they are not, SLS's purported actions do not constitute extreme and outrageous conduct as a matter of Wisconsin law. Extreme and outrageous conduct is that which is "so egregious that 'the average member of the community' would regard the acts forming the basis for the claim 'as being a complete denial of the plaintiff's dignity as a person.'" *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991) (applying Wisconsin law) (quoting *Alsteen v. Gehl*, 21 Wis. 2d 349, 359–60, 124 N.W.2d 312, 318 (1963)). Further, "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wyand-Williams v. St. Norbert Coll., Inc.*, 2013 WI App 30, 346 Wis. 2d 280, 827 N.W.2d 929 (quoting 46 Restatement (Second) of Torts, § 46); *see, e.g.*, *Scarpaci v. Milwaukee Cty.*, 96 Wis. 2d 663, 666, 292 N.W.2d 816, 818 (1980) (affirming denial of a motion to dismiss a claim for IIED where a county coroner conducted an autopsy on a deceased child after the child's parents had expressly instructed the coroner not to do so); *McKissick v. Schroeder*, 70 Wis. 2d 825, 235 N.W.2d 686, 690 (Wis. 1975)

(police officers exhibited extreme and outrageous behavior when they entered plaintiff's house after fatally shooting her son, refused to assist her in calling for aid, and then questioned her at length while her son was dying). Unreasonable conduct, that is not extreme and outrageous, is insufficient to support a claim for intentional infliction of emotional distress. *Alsteen*, 21 Wis. 2d 349, 361 (contractor's acts in leaving homeowner exposed to winter weather and in insulting her were unreasonable but not extreme and outrageous).

Here, Plaintiff asserts that SLS sent him "excessive written correspondence" regarding his defaulted mortgage, placed "daily harassing calls" to Ms. Miner, misapplied trial loan payments, and failed to communicate the existence of the purported modification agreement to Shellpoint. Am. Compl. ¶¶ 18-19, 32, 41, 52. Plaintiff does not allege, nor can he, that SLS had significant, if any, contact with him in the several months prior to the foreclosure action and Ms. Miner's death, or that SLS foreclosed on the subject property.

The same types of allegations made by Plaintiff have repeatedly been found not to constitute extreme and outrageous conduct. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (Loan servicer's alleged misapplication of loan payments and improper report of loan as delinquent does not constitute "extreme and outrageous conduct" sufficient to support an IIED claim under Illinois law); *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 566 (7th Cir. 2020) (Failure to process a loan modification in good faith and misleading borrower about its status, even if intentional, is not "extreme and outrageous" conduct sufficient to support an IIED claim under Indiana law); *Lenczner v. Wells Fargo, N.A.*, No. 14-cv-691-wmc, 2017 U.S. Dist. LEXIS 82713, at *7–8 (W.D. Wis. May 31, 2017) (Bank's alleged failure to comply with the verification and notice requirements of the FDCPA in connection with its efforts to collect upon a defaulted mortgage loan are insufficient to state a claim for IIED).

SLS anticipates Plaintiff's response to this motion will rely in large part on the court's denial of SLS's motion to dismiss an intentional infliction of emotional distress claim in *Woltring v. Specialized Loan Servicing LLC*. 56 F. Supp. 3d 947, 949 (E.D. Wis. 2014). For a host of reasons, however, that case is entirely distinct from this case. In *Woltring*, the Plaintiff alleged that SLS initiated a foreclosure action and obtained a judgment against the debtor. *Id.* at 949. The Plaintiff asserted that SLS repeatedly and intentionally overstated the payoff amount from October 2010 through March 2013 despite a state court foreclosure judgment, causing Plaintiff's Chapter 13 bankruptcy filings to fail three times. *Id.* at 949–50, 953. The Plaintiff also alleged that SLS sent a property inspector to Plaintiff's home on the day of Plaintiff's son's wedding who announced to all of the guests in attendance that Plaintiff was in foreclosure. *Id.* at 952. The court determined that these allegations of repeated and purposeful harassing conduct over a period of several years were sufficient to overcome a motion to dismiss. *Id.* at 953.

Unlike in *Woltring*, there are no allegations here that SLS was involved in the foreclosure proceedings, that it blocked bankruptcy petitions, or that SLS had personal contact with the Miners or their contacts. SLS's relationship with the Plaintiff here was limited to allegedly "excessive written correspondence" and calls to his wife. Am. Compl. ¶¶ 18-19. Further, Plaintiff does not allege that SLS contacted him after Shellpoint began servicing the account in June 2019. SLS's involvement with the Miners ended many months prior to the foreclosure action in November 2019, Ms. Miner's death in January 2020, and the payoff of the subject loan in May 2020. *See* Am. Compl. ¶¶ 47, 94, 105-106. As SLS's purported actions do not constitute extreme and outrageous conduct, this Court should dismiss Count Six of the Amended Complaint.

### 3. Plaintiff Fails to Allege He Suffered an Extreme Disabling Emotional Response.

To state a claim for intentional infliction of emotional distress, Plaintiff must plead factual allegations that support an inference that he suffered an extreme disabling emotional response. *See Rabideau*, 2001 WI 57, ¶33. Here, the bulk of Plaintiff's allegations focus on injuries his wife, a non-party, purportedly suffered. These allegations are irrelevant to whether or not Plaintiff experienced an extreme disabling emotional response, as Plaintiff has no standing to maintain a claim for emotional damages that she suffered. Plaintiff makes no allegations specific to his own mental condition, such as when he developed an extreme disabling emotional response, what mental and physical symptoms he had, or what treatment he sought. He simply asserts that "the Miners" suffered damages that were "disabling and extreme," "the Miners suffered agonizing emotional distress, depression, mental anguish, and anxiety," "the Miners lived in a state of perpetual fear and anxiety," and that the "Defendants' collective conduct destroyed the Miners' marriage…[and] caused the Miners to be perpetually stressed, irritable, and aggravated, thus affecting the Miners' day-to-day relations with each other." Am. Compl. ¶¶ 113, 119-120, 197.

These allegations are insufficient to establish that Mr. Miner, the Plaintiff, suffered an extreme disabling emotional response or severe emotional distress. "The severity of the injury is not only relevant to the amount of recovery, but is a necessary element to any recovery. The plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional distress caused by a defendant's conduct. Temporary discomfort cannot be the basis of recovery." *Alsteen*, 21 Wis. 2d 349, 360–61. For these reasons, this Court should dismiss Count Six.

### 4. Plaintiff Fails to Allege Legal Causation.

This Court should dismiss Plaintiff's claim for intentional infliction of emotional distress and his claim in the alternative for negligent infliction of distress because SLS's actions did not legally cause Plaintiff's alleged injury. In order to assert a claim for intentional infliction of emotional distress, Plaintiff must plead factual allegations that support an inference that SLS was a cause-in-fact of his extreme disabling emotional response. *See Rabideau*, 2001 WI 57, ¶33. To assert a claim for negligent inflict of emotional distress, he must plead factual allegations that support an inference that SLS was a cause-in-fact of his severe emotional distress. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 632, 517 N.W.2d 432, 434 (1994).

Even if a plaintiff sets forth an allegation of causation, "[i]t does not necessarily follow that a claim… must be allowed to go forward. A court may decide, as a matter of law, that considerations of public policy require dismissal of the claim. These public policy considerations are an aspect of legal cause, although not a part of the determination of cause-in-fact." *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 143, 549 N.W.2d 714, 716 (1996) (citations omitted). Though causation is often a question for the fact-finder, courts may "make a determination regarding legal causation at the pleadings stage." *Id.*at 144. Courts evaluate legal causation by considering traditional negligence public policy criteria:

> (1) Whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.* at 144–45 (quoting *Bowen*, 183 Wis.2d at 655). The *Kleinke* case illustrates how these considerations are applied. There, the defendant pumped 300 gallons of fuel oil directly into the plaintiffs' house. *Id.* at 142. The plaintiffs suffered physical problems due to oil fume inhalation

and severe emotional distress and depression from "being forced to abandon their home of over 42 years." *Id.* Though the court recognized that people may become "extremely distraught" over "property which is quite significant to them personally," emotional pain that is recoverable must be related to an extraordinary event. *Id.* at 145. Property damage, it determined, is a "life experience that all unfortunately may be expected to endure." *Id.* (citations omitted). The *Kleinke* considerations likewise require dismissal here.

### (a)    Plaintiff's Injury is Out of Proportion With, and Too Remote From, SLS's Conduct.

Plaintiff makes broad assertions about the emotional distress he purportedly experienced as a result of "Defendants' collective conduct." *See* Am. Compl. ¶¶ 113, 119-120, 197. Plaintiff does not allege that he ever spoke with SLS or had any other contact with SLS beyond receiving "excessive mail." Plaintiff does not allege that SLS had any contact with him, or his wife, after June 2019 and does not allege, nor could he, that SLS was a party to the foreclosure action. He does not claim that any of SLS's activities specifically were the actions that caused his alleged distress. SLS's purported actions are too remote from the damages that Plaintiff asserts and the damages alleged are wholly out of proportion to the acts that Plaintiff asserts SLS engaged in (mailings, telephone calls, misapplying payments, and failing to inform Shellpoint of a modification agreement). *See Kleinke*, 202 Wis. at 144–45. Therefore, this Court should determine that there is no legal causation between SLS's alleged actions and Plaintiff's damages.

### (b)    Recovery Would Place an Unreasonable Burden on Debt Collectors and Would Throw Open the Doors to Fraudulent Claims.

Holding SLS liable for Plaintiff's emotional reaction to SLS's legal collection activities would be unreasonable under the circumstances alleged here. Plaintiff experienced financial insecurity and repeatedly defaulted on his loan. *See* Am. Compl. ¶¶ 17, 23. As a result, SLS

purportedly engaged in "aggressive collection efforts." *Id.* ¶ 18. Unfortunately, stress related to finances is pervasive in the United States. According to the American Psychological Association's 2020 survey, approximately 64% of all Americans felt stressed about money. American Psychological Association, 2020 Stress in America survey, (available at: https://www.apa.org/topics/stress/holiday-money). In the first quarter of 2018, when SLS began servicing Plaintiff's loan, the delinquency rate on mortgage loans for one-to-four unit residential policies was 4.63% and an additional 1.16% were in foreclosure. Press Release, Mortgage Bankers Association, Mortgage Delinquencies Down in 1st Quarter of 2018 (May 16, 2018) (available at: https://www.mba.org/2018-press-releases/may/mortgage-delinquencies-down-in-1st-quarter-of-2018). Financial insecurity, like property damage, is unfortunately common and emotional distress related to common life experience is not compensable. *See Kleinke*, 202 Wis. 2d at 145 (Emotional pain that is recoverable must be related to an extraordinary event).

Allowing recovery for emotional distress caused by collection activities and mortgage disputes would place an unreasonable burden on debt collectors and lenders. As the Wisconsin Supreme Court explained:

> [A]llowing recovery would place an unreasonable burden on the negligent actors in property damage cases. The defendants are already liable for the cost of the damage to the property. It would be unfair to also hold them liable for the emotional distress that the damage caused the owners. This is particularly true when the property involved has some sentimental value. In such cases the value of the property itself could be quite small while the recovery for the distress could be significant. Allowing recovery for emotional distress in such cases would be a windfall to the plaintiff and unfair to the defendant.

*Id.* at 145–46. Federal and state law permits, and often requires, SLS to engage in certain debt collection and notice activities, such as sending the periodic mortgage statements and default notices that Plaintiff asserts were excessive. *See e.g.*, 12 C.F.R. § 1026.41 (mandating periodic mortgage statements that include delinquency information); 12 C.F.R. §§ 1024.39-1024.41

(mandating notices and loss mitigation procedures for delinquencies). Holding SLS liable for Plaintiff's emotional reaction to SLS's legal collection activities would be unreasonable under the circumstances alleged here.

Similarly, it would be unreasonable as a matter of public policy to hold SLS liable for emotional distress caused by alleged "conduct in repeatedly refusing to honor the Modification Agreement" and purported failure to "notify Shellpoint of the permanent loan modification." *See* Am. Compl. ¶¶ 52, 118. Permitting claims of this nature against servicers or lenders would throw open the floodgates for litigants seeking compensation for the emotional stress that all people facing financial hardship, default, or foreclosure are likely to endure. Since Plaintiff failed to allege any facts that support an inference that SLS was a cause-in-fact of his emotional stress and because there is no legal cause, this Court should dismiss Plaintiff's intentional and negligent infliction of emotional distress claims.

### D. The Amended Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress.

As set forth in depth above, Plaintiff's negligent infliction of emotional distress claim fails because there is no legal causation between SLS's acts and Plaintiff's alleged emotional distress. *See supra* IV(B)(4). Plaintiff's alternative claim for negligent infliction of emotional distress also fails because Plaintiff fails to plead that SLS owed him a standard of care, that SLS's conduct fell below that standard of care, that he suffered an injury, or that SLS's conduct was the cause-in-fact of his injury. A claim for negligent infliction of emotional distress contains three elements: "(1) that the defendant's conduct fell below the applicable standard of care, (2) that the plaintiff suffered an injury, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury." *Bowen*, 183 Wis. 2d 627, 632. In "a cause of action for negligent infliction of emotional distress the injury a plaintiff must prove [] severe emotional distress; but the plaintiff need not prove physical

manifestation of that distress." *Id.* Even when the three elements are met, "[a] court may decide, as a matter of law, that considerations of public policy require dismissal of the claim." *Id.* at 443.

### 1.    Plaintiff Fails to Allege He Suffered Severe Emotional Distress.

To state a claim for negligent infliction of emotional distress, that he suffered severe emotional distress. *See Bowen*, 183 Wis. 2d 627, 632. Plaintiff makes no allegations as to his own mental condition, such as when he developed severe emotional distress, the mental and physical symptoms he had, or treatment he sought. He simply asserts that "the Miners" suffered damages that were "disabling and extreme," "the Miners suffered agonizing emotional distress, depression, mental anguish, and anxiety," "the Miners lived in a state of perpetual fear and anxiety," and that the "Defendants' collective conduct destroyed the Miners' marriage…[and] caused the Miners to be perpetually stressed, irritable, and aggravated, thus affecting the Miners' day-to-day relations with each other." Am. Compl. ¶¶ 113, 119-120, 197.

These allegations are insufficient to establish that Mr. Miner, the Plaintiff, suffered severe emotional distress. *See Alsteen*, 21 Wis. 2d 349, 360–61 ("The severity of the injury is not only relevant to the amount of recovery, but is a necessary element to any recovery. The plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional distress caused by a defendant's conduct. Temporary discomfort cannot be the basis of recovery."). Because Plaintiff failed to allege facts that support an inference that he experienced severe emotional distress, this Court should dismiss Plaintiff's alternative claim within Count Six.

### 2.    SLS Does Not Owe Plaintiff a Duty of Care.

Plaintiff fails to state a claim for negligent infliction of emotional distress because he does not allege that SLS owed him a duty of care or that SLS's conduct fell below the applicable standard of care. A claim for negligent infliction of emotional distress contains three elements: "(1) that the defendant's conduct fell below the applicable standard of care, (2) that the plaintiff

suffered an injury, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury." *Bowen*, 183 Wis. 2d 627, 632.

Not only does Plaintiff not allege a duty of care, but an amendment to include such allegations would futile as SLS did not owe the Miners a duty to conduct itself in a manner unlikely to create an unreasonable risk of emotional harm. *See Alsteen*, 21 Wis. 2d 349, 362–63. In *Alsteen*, a contractor insulted a widowed homeowner and left her home exposed to winter weather elements. *Id*. Though a jury determined that the contract conducted himself in an unreasonable manner and that his conduct was a substantial factor in causing physical and mental injuries to the homeowner, the Supreme Court determined that the contractor did not have a duty to the homeowner and was not liable emotional damages. *Id*. at 349–55, 362–63. The court noted that while "a contractual duty may give rise to a cause of action predicated upon negligence," a person performing a personal-service contract does not have the obligation to perform the contract in a matter than does not create an unreasonable risk of emotional harm. *Id*. The court explained:

> We must recognize that all of us are subjected to various degrees of emotional pressure and that despite our best intentions we often quite carelessly treat others in a manner likely to cause them emotional stress. If such conduct, itself a product of emotional stress, were to be a basis of a lawsuit, each of us would be reinforcing the aggression and hostility we already possess and our society would be more abrasive than it already is. We must conclude that the desirable goal of avoiding careless disregard for the feelings of others must be accomplished by some other means than a lawsuit.

> *Id*. at 362.

In this case, Plaintiff did not allege that SLS owed a duty of care or breached any such duty. An amendment would be futile because SLS did not owe a duty to the Miners. Therefore, this Court should dismiss Plaintiff's claim in the alternative for negligent infliction of emotional distress.

### E. Plaintiff Fails to State a Claim for Fraudulent Misrepresentation.

This Court should dismiss count seven of the Amended Complaint because Plaintiff failed to plead, with particularity, that SLS made a factual representation knowing it was untrue or made it recklessly without caring whether it was true or false. To state a claim for fraudulent misrepresentation, the Plaintiff must allege: "(1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." *Kaloti Enter., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205 (citations omitted).

A complaint must plead allegations of fraud with particularity, stating the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). "The plaintiff may need to perform pre-complaint investigation to provide 'the who, what, when, where, and how' of the fraud or mistake" though the relevance of such information is case-specific and courts should not take "an overly rigid view." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (citations omitted). In the Seventh Circuit, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

Plaintiff's fraudulent misrepresentation claim fails. The Amended Complaint misstates the elements of fraudulent misrepresentation in Wisconsin. Plaintiff fails to allege that SLS made a factual representation knowing that it was untrue or made it recklessly without caring whether it was true or false. This Court should therefore dismiss Count Seven for failing to plead an essential element of the claim.

An amendment to add such a claim would be futile here, as the allegations assert that SLS made, and corrected, an error. Am. Compl. ¶¶ 41, 45, 48. Plaintiff's understanding that there was a mistake rather than intentional fraud is confirmed by his allegations that SLS and Shellpoint communicated about the loan modification and that Shellpoint did send documentation to finalize the loan modification. *Id.* ¶¶ 57, 73.

Plaintiff also fails to plead with particularly facts that infer that SLS made a false representation with the intent to deceive. Plaintiff asserts that SLS stated it had improperly applied the payments and that SLS would recognize the modification. *Id.* ¶ 41. Plaintiff further stated that Shellpoint said that it was working with SLS to memorialize the modification and that Shellpoint sent Plaintiff documentation for the modification. *Id.* ¶¶ 57, 73. These allegations do not demonstrate an intent to deceive. Thus, this Court should dismiss Plaintiff's fraudulent misrepresentation claim.

## F. The Amended Complaint Fails to State a Claim for Wrongful Death.

Next, as discussed further below, the Court should dismiss Plaintiff's wrongful death claim for three reasons: (1) it fails to give SLS fair notice of the underlying claim that Ms. Miner purportedly could have alleged if she were alive today, (2) it relies on conclusory statements that are contradicted by Plaintiff's own allegations, and (3) it defies common sense that SLS's letters and telephone calls from no later than June 2019 actually caused Ms. Miner's heart attack more than six months later.

### 1. Plaintiff Fails to Plead an Underlying Claim.

In Wisconsin, wrongful death is a statutory claim. *See* Wis. Stat. § 895.03; *see also Bowen v. Am. Family Ins. Co.*, 2012 WI App 29, ¶10, 340 Wis. 2d 232, 239, 811 N.W.2d 887, 890. To state a claim for wrongful death, Plaintiff must allege (1) a wrongful act, neglect or default, (2) which causes, (3) the death of another person. Wis. Stat. § 895.03. Further, because wrongful

death claims in Wisconsin are derivative actions, "the plaintiff in a wrongful death action has no claim if the decedent would not have been able to maintain an action and recover damages in his own right if he had not died." *Christ v. Exxon Mobil Corp.*, 2015 WI 58, ¶¶22, 46, 362 Wis. 2d 668, 690, 866 N.W.2d 602, 613 (citations omitted).

A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Here, the Amended Complaint alleges that Ms. Miner would be alive today if "Defendants collectively honored and acknowledged the Modification Agreement," Am. Compl. ¶ 266, and, "the excruciating stress and mental anguish caused by Defendants' collective conduct in trying to steal the Miner's family home culminated in Tiffany's untimely death." *Id.* ¶ 260. These allegations are vague and do not give SLS fair notice of what wrongful act, neglect, or default Plaintiff asserts that SLS committed that Ms. Miner could have recovered on if she were alive today. As Plaintiff failed to identify and plead the elements of this underlying claim, this Court should dismiss the wrongful death claim against SLS.

### 2. Plaintiff's Conclusory Statements and Legal Conclusions are Insufficient to State a Claim for Wrongful Death and Defy Common Sense.

This Court should also dismiss Plaintiff's wrongful death claim because it relies on conclusory statements that are not entitled to an inference of truth. *See Iqbal*, 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Amended Complaint asserts that Ms. Miner's "hypertension was proximately caused by the torturing stress and mental anguish arising from Defendants' collective efforts to steal the Miners' family home." Am. Compl. ¶ 262. Contradictorily, Plaintiff only alleges that SLS placed telephone calls and sent mail to Ms. Miner until June 2019. He does not allege that SLS had any involvement

or contact with him or Ms. Miner after June 2019, nor does he allege that SLS was a party to the foreclosure action. *Id.* ¶ 19. Plaintiff's assertion that SLS made an effort to steal his home is a conclusory statement, contradicted by Plaintiff's own allegations, and is plainly insufficient. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Further, the allegation that Ms. Miner's heart attack in January 2020 was a direct result of SLS's actions from June 2019 and earlier simply defies common sense. This court is required "to draw on its judicial experience and common sense" in "determining whether a complaint states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Plaintiff does not allege that SLS had any contact with the Plaintiff or Ms. Miner after June 2019. *See generally* Am. Compl. ¶¶ 45-47.

### 3. Plaintiff Failed to Join an Indispensable Party.

Finally, Plaintiff's wrongful death claim should also be dismissed for his failure to join an indispensable party – Ms. Miner's minor child or children. Plaintiff asserts that Ms. Miner has at least one child, but does not assert that the child is an adult. *Id.* ¶ 121, 267. Wisconsin Statute section 895.04(2) "establishes a hierarchy of claimants eligible to recover." *Bowen*, 811 N.W.2d at 891. If there are no surviving minor children a wrongful death claim belongs to a surviving spouse. *See* Wis. Stat. § 895.04(2). If Ms. Miner did have minor children, however, then the child or children are entitled to a portion of any such recovery and are indispensable parties who must be joined. *See id.*; *Kochel v. Hartford Acci. & Indem. Co.*, 66 Wis. 2d 405, 410, 225 N.W.2d 604, 607 (1975) ("[T]he persons statutorily empowered to sue for wrongful death are united in interest …and therefore indispensable parties who must be joined.").

**G.    Plaintiff's Breach of Contract Claim Fails Because Plaintiff Fails to Allege the Existence of an Enforceable Contract.**

To properly allege a breach-of-contract claim, a plaintiff must allege: 1) the existence of an enforceable contract; 2) a breach; and 3) damages. *See Tietjen v. Ninneman*, Case No. 16-cv-1542, 2017 U.S. Dist. LEXIS 222308, *12–13 (E.D. Wis. Sept. 29, 2017) (citing *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 11, 714 N.W.2d 582, 588)). So-called "agreements to agree" are not enforceable contracts. *See e.g.*, *United States v. Shah*, 193 F. Supp. 2d 1091, 1095 n. 4 (E.D. Wis. 2002) (citing *Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978) ("Even if parties agree, point by point, on all the terms of a contract, if they understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed.")). Plaintiff's breach-of-contract claim against SLS fails because Plaintiff's allegation of the existence of a valid contract is deficient.

Plaintiff asserts that on January 9, 2019, SLS sent the Miners correspondence offering a loan modification. *Id.* ¶ 24. This correspondence states:

> Modify your mortgage. You are approved to enter into a trial period plan. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand the steps you need to take to successfully complete the trial period plan and permanently modify your mortgage payments.
>
> . . .
>
> To accept this offer, you must make the first monthly "trial period payment" by the date shown below. To be approved for a permanent modification, you must make the following trial period payments in a timely manner . . . (emphasis added)
>
> . . .
>
> After you make all trial period payments in a timely manner and submit all required documents, your mortgage will be permanently modified as described herein. (emphasis added)

*Id.* ¶ 26.

Plaintiff has alleged specifically that "[t]he trial modification offer, made by SLS, was accepted upon the Miners payment as expressly provided in the trial modification offer, creating a valid and enforceable contract between the Miners and SLS." Am. Compl. ¶ 135.[1] The trial modification offer did not make an offer to modify Plaintiff's mortgage, and was not conditioned <u>only</u> on Plaintiff making trial payments. By its very terms all the offer promised was that if Plaintiff made the three specified payments then Plaintiff would be approved to proceed forward with SLS's internal approval process for loan modification. Am. Compl. ¶ 26 ("You are approved to enter into a trial period plan. This is the first step toward qualifying for more affordable mortgage payments."). Assuming that Plaintiff did make timely payments on the schedule referred to in paragraph 26 of the Amended Complaint, the only thing that SLS was really obliged to do was not to immediately disqualify Plaintiff internally as a candidate for a loan modification. Plaintiff has not alleged anything of the sort. In fact, it seems likely that SLS elected not to move forward and make a modification offer when Plaintiff failed to make a mortgage payment in May of 2019. *See* Am. Compl. ¶¶ 29-33 (not alleging that Plaintiff made a mortgage payment in May of 2019). SLS did not and was not obliged to make an offer to Plaintiff for a loan modification, meaning that there was never even an "offer" much less a valid contract.

Further, even if the correspondence that Plaintiff refers to as the "trial modification offer" was actually an "offer" under Wisconsin law, Plaintiff still did not accept it and form a valid contract because he did not comply with its requirements. As Plaintiff admits, the "offer" required him to sign and submit back to SLS "all required documents." Am. Compl. ¶ 26. And Plaintiff fails to allege that either he or Mrs. Miner signed and submitted anything back to SLS regarding

---

[1] Notably, Plaintiff does not allege that SLS is liable for breach of the Modification Agreement. *See* Am. Compl. ¶ 136 ("The Modification Agreement is a valid and enforceable contract between the Miners and Shellpoint as 'Attorney in Fact for doc/o [1900 Capital].'").

the purported offer. By failing to allege that he complied with all the terms of the alleged offer, Plaintiff cannot allege that he formed a contract with SLS. *See Golden Dipt. Co., Div. of DCA Food Industries, Inc. v. Systems Engineering & Mfg. Co.*, 465 F.2d 215, 216 (7th Cir. 1972) ("[A]an offeror may, by the terms of his offer, restrict the mode of acceptance."). Therefore, this Court should dismiss Plaintiff's breach of contract claim.

### H.  Plaintiff Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing.

Plaintiff's claim for a breach of the duty of good faith and fair dealing similarly fails because SLS and Plaintiff did not enter into an enforceable contract. Plaintiff also fails to state a claim because his allegations confuse a tort claim for bad faith with the breach of the duty of good faith and fair dealing in the context of contract. *See, e.g.* Am. Compl. ¶¶ 155, 158; *Foseid v. State Bank*, 197 Wis. 2d 772, 792, 541 N.W.2d 203, 211 (Ct. App. 1995) ("Wisconsin's recognition of a tort of bad faith or lack of good faith in certain insurance cases, and its concomitant adherence to the rule implying a duty of good-faith dealing in all contracts, can lead to confusion…."). A bad faith claim is "a separate and distinct cause of action…which results from a breach of duty imposed as a consequence of the relationship establish by contract" within the context of an insured/insurer relationship. *See Dufour v. Progressive Classic Ins. Co.*, 2016 WI 59, ¶¶53-54, 370 Wis. 2d 313, 340-41, 881 N.W.2d 678, 691 (citations omitted); *Foseid*, 197 Wis. 2d at 792 ("Wisconsin courts have limited tort liability for breach of the duty of good faith to cases involving insurance companies and their insureds."). There is no such relationship alleged here and thus the punitive and tort damages, to which Plaintiff claims he is entitled, are unavailable. *See Foseid*, 197 Wis. 2d at 792; Am. Compl. ¶ 158.

Under Wisconsin law, the duty of good faith and fair dealing is implied in every contract. *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶41, 301 Wis. 2d 752, 781, 734 N.W.2d 169,

183. This duty requires each party to "not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, P35, 291 Wis. 2d 393, 717 N.W.2d 58 (citation omitted). However, a "breach of good faith is the same as a breach of any other contract term." *Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 966 (7th Cir. 2000). Thus damages are limited to contractual damages, "nothing more." *See id.*

## I. Plaintiff Fails to State a Claim for a Violation of the Wisconsin Deceptive Trade Practices Act.

Plaintiff makes the novel claim that SLS violated the Wisconsin Deceptive Trade Practices Act, specifically Wis. Stat. § 100.18(1), by falsely offering to modify Plaintiff's mortgage and then failing to do so. Am. Compl. ¶ 168. To properly allege a claim under this section, Plaintiff must claim that, "(1) the defendant made a representation to 'the public' with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially caused a pecuniary loss to the plaintiff." *Zimmerman v. Logemann*, No. 09-cv-210, 2011 U.S. Dist. LEXIS 52354, at *33 (W.D. Wis. Mar. 17, 2011). This claim fails.

While an individual member of the public may sometimes be considered a member of the "public," *id.*, once a "'particular relationship' exists between [the plaintiff] and the defendant," the individual is no longer a member of the public. *Fricano v. Bank of Amer. N.A.*, 2016 WI App. 11, ¶ 28, 875 N.W.2d 143 (Wis. App. 2016) (quoting *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, P27, 301 Wis. 2d 109, 732 N.W.2d 792.). And here, there was a preexisting "particular relationship" between SLS and Plaintiff because of the mortgage SLS was servicing that Plaintiff was bound by. Therefore, as Plaintiff could legally not have been a member of "the public," Plaintiff's claims under Wis. Stat. § 100.18(1) must fail.

## J.     Plaintiff's Truth in Lending Claim Fails as a Matter of Law.

Plaintiff claims that SLS violated 15 U.S.C. §1639f(a) and C.F.R. §1026.36(c)(1)(i) by not crediting payments made to his account on the date that the payments were received. Am. Compl. ¶ 189. Section 1639f(a) states that: "no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency." 12 C.F.R. § 1026.36(c)(1)(i) provides: "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt . . . ." Under 15 U.S.C. § 1640(e) an action under these provisions must be brought within one year of an alleged violation.

To begin, Plaintiff does not allege that SLS accepted any payments after June of 2019, and therefore does not allege that the above-mentioned statute and regulation were violated after that date. However, Plaintiff did not serve the complaint until January 25, 2021. Thus, 15 U.S.C. § 1640(e) prohibits Plaintiff from maintaining this claim.

Further, 15 U.S.C. § 1640(a) provides civil liability for, "any *creditor* who fails to comply with any requirement imposed under this chapter." *See also Dawoudi v. Nationstar Mortg. LLC.*, 448 F. Supp. 3d 918, 928 (N.D. Ill. 2020) ("Because it remains settled that TILA liability does not extend to loan servicers [] this Court dismisses [Plaintiff's Section 1639g claim]."). And it is undisputed that SLS is a "servicer" and not the owner of Plaintiff's former mortgage that forms the basis for his claims. Am. Compl. ¶ 7 ("SLS is a national mortgage servicer . . . ."). Thus, Plaintiff's claims under the Truth in Lending Act must also fail.

## K.     Plaintiff's Wisconsin Statutes § 224.71 Claim Should be Dismissed.

Plaintiff's claim against SLS under Wis. Stat. §§ 224.71–224.82 also fails because the Amended Complaint does nothing more than state "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Paragraphs 269 through

271 simply lay out the elements for the cause of action, quoting from statutes where appropriate. *See* Am. Compl. ¶¶ 269-271. Then, Plaintiff alleges that all Defendants collectively "engaged in the above described conduct in a manner that harmed Plaintiff . . . the entire course of conduct, as outlined extensively throughout this Complaint . . . ." Am. Compl. ¶ 272. The allegations against SLS in paragraph 272 fall far short of what is required to state a claim under Rule 12(b)(6) because they are vague, conclusory, and non-specific. *See Mescall*, 603 F.2d at 1269 ("In giving the pleadings a liberal construction, however, we are not required to accept legal conclusions either alleged or inferred from the pleaded facts.").

Plaintiff does allege that, "Defendants' course of conduct further underscores their lack of competency to act as mortgage bankers in a manner that protects the public interest and inability to follow professional guideposts. Specifically, Defendants' willful disregard of the Modification Agreement and attempts to steal the Miners' home demonstrates Defendants' inability to perform their duties . . . ." Am. Compl. ¶ 273. These allegations are similarly vague, however. Furthermore, it is undisputed that SLS no longer serviced Plaintiff's mortgage by the time Shellpoint sent Plaintiff the Modification Agreement. *See* Am. Compl. ¶ 47 ("On June 7, 2019, Shellpoint began servicing the subject loan."); *id.* ¶ 73 ("On September 4, 2019, Shellpoint finally sent the Miners documentation to finalize the permanent loan modification ('Modification Agreement')."). Therefore, only the allegations contained in paragraph 272 of the Amended Complaint could refer to SLS, and those allegations fall far short of the specificity required by Rule 12(b)(6). *See Bell Atl. Corp.*, 550 U.S. at 555 (requiring that defendants be given "fair notice" of the claims against them).

## CONCLUSION

For the foregoing reasons, SLS respectfully requests that this Court dismiss all claims asserted against SLS with prejudice.

DATED:  July 7, 2021                    **BALLARD SPAHR LLP**


By  _/s/ Karla M. Vehrs_                /
    Karla M. Vehrs (State Bar No. 1089860)
    vehrsk@ballardspahr.com
 2000 IDS Center
 80 South Eighth Street
 Minneapolis, MN 55402-2274
 (612) 371-3211
 (612) 371-3207 (facsimile)

**ATTORNEY FOR DEFENDANT
SPECIALIZED LOAN SERVICING, LLC**