UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

COURTENAY M. MINER,

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING LLC;
NEWREZ LLC d/b/a SHELLPOINT MORTGAGE
SERVICING;
1900 CAPITAL TRUST III, BY U.S. BANK
TRUST NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS
CERTIFICATE TRUSTEE a/k/a MCM CAPITAL,
LLC; and
JOHNSON, BLUMBERG & ASSOCIATES, LLC,

    Defendants.

Case No.: 2021-CV-00107

## **BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

In support of its motion to dismiss, Defendant Johnson Blumberg & Associates, LLC ("JBA") respectfully states:

### **INTRODUCTION**

JBA is a law firm that handled a foreclosure action on behalf of its clients and is now the subject of the current lawsuit brought by the Plaintiff, who was the defendant in a foreclosure action. The Plaintiff (notwithstanding he is a third party with no legal relationship with JBA, fiduciary or otherwise), brings claims against JBA for wrongful death, unjust enrichment, and violations of the Fair Debt Collection Practices Act ("FDCPA"). The claims against JBA must be dismissed because (among others):

- The wrongful death claim is barred by litigation privilege and Plaintiff has only plead conclusory allegations related to causation;

- Plaintiff did not confer a benefit on JBA to allow a claim for unjust enrichment to proceed; and

- The FDCPA is not meant as an enforcement mechanism for state and federal law – the motion for default judgment and payoff statement (which Plaintiff ultimately used to pay off the loan without objection) were or should have been dealt with at the state court level.

Therefore, JBA respectfully requests that the Court dismiss all claims against it.

## **FACTS FROM AMENDED COMPLAINT RELATED TO JBA**

The other Defendants have fully set forth the background facts related to this matter, and it is not necessary that they be repeated again here. JBA will set forth the minimal factual allegations from the Complaint related to it.

On July 18, 2019, JBA sent the Miners correspondence informing the Miners that their home loan (the "Subject Loan") was referred to JBA by 1900 Capital Trust III, by U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Certificate Trustee a/k/a MCM Capital, LLC ("1900 Capital") and Shellpoint Mortgage Servicing, LLC ("Shellpoint") for a foreclosure lawsuit. (ECF No. 31 at ¶¶64-65.) On November 27, 2019, JBA filed a foreclosure lawsuit against the Miners. (Id. at ¶87.) The Miners retained their current counsel (who filed this lawsuit), and their instant counsel sent a letter to JBA on December 23, 2019 that requested the matter be dismissed because of the alleged mishandling of the Subject Loan, which they claimed included a purported loan modification. (Id. at ¶¶89-91; see also Attachment 1 - December 23, 2019 Letter from Sulaiman Law Group to JBA.)[1] The Miners retained different counsel to defend the foreclosure case. (Id. at ¶¶93.) Tragically, Tiffany Miner passed away on January 28, 2020. (Id. at ¶94.)

---

[1] Documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to a claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Plaintiff referred to the December 23, 2019 letter and the dismissal documents from the underlying foreclosure action in the Complaint.

2

Because the Miners did not file an answer or responsive pleading, on March 10, 2020, JBA filed a Motion for Default Judgment on behalf of 1900 Capital. (Id. at ¶¶100-101.) On March 17, 2020, the Miners' new counsel Larraine McNamara-McGraw filed an appearance in the foreclosure case. (Id. at ¶103.) On April 10, 2020, JBA provided Plaintiff a payoff statement for the subject loan of $79,630.02. (Id. at ¶104.) Plaintiff paid off the loan in May 2020. (Id. at ¶106.) The foreclosure was then voluntarily dismissed without any reservation of rights or objections. (Id.)

That is the entirety of JBA's conduct – it filed a foreclosure on behalf of a client, it received a letter from an attorney who never filed an appearance, it sought a default judgment when no attorney appeared, and it sent a payoff letter that was honored. Yet Plaintiff alleges that the Defendants' "collective conduct" cause the Miners to suffer emotional distress, depression, mental anguish, anxiety, and was the proximate cause of Tiffany Miner's death. (Id. at ¶¶113-124.) The Miners allege they paid unauthorized fees and additional interest when Courtenay Miner paid off the loan, resulting in a monetary loss and having to expend money on an attorney and use the life insurance proceeds. (Id. at ¶¶125-126.) For these reasons, Plaintiff heaps a panoply of claims against all Defendants, impermissibly mingled together on the collective conduct theory. The specific claims against JBA are for wrongful death, unjust enrichment, and violations of the violations of the FDCPA. (Id. at ¶¶159-165, 234-267.)

## STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal is proper where "the plaintiff can prove no set of facts that would entitle him to relief." *Marshall Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, rather than the factual sufficiency. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). "[W]hen the allegations in a complaint, however true, could not raise a claim of

3
1038670\308473553.v1

entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966, 167 L.Ed.2d 929, 942 (2007)(internal citations and quotations omitted).

A court must accept all of the well-plead allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Id.* (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-679.

## ARGUMENT

### I. JBA OWED NO DUTY TO THE MINERS AND THE LITIGATION PRIVILEGE BARS PLAINTIFF'S CLAIM FOR WRONGFUL DEATH AGAINST JBA

In Count X of the Complaint, Plaintiff brings a claim against all Defendants for wrongful death. (ECF No. 31 at ¶¶255-267.) "Under Wisconsin's wrongful death statute, a person who causes the death of another by a wrongful act is liable for damages whenever the injured party could have maintained an action and recovered damages had death not ensued." *Bowen v. Am. Family Ins. Co.*, 340 Wis. 2d 232, 238-39 (2012). Pursuant to Wisconsin's wrongful death statute, "a wrongful death claim belongs to the deceased's surviving spouse." *Id*. at 239. Plaintiff alleges

that Defendants' "collective conduct" was the proximate cause of Tiffany's death. (ECF No. 31 at ¶258.) According to Plaintiff, Tiffany Miner's death was caused by hypertension that led to irreversible and fatal brain damage, and that the hypertension was caused by the stress and mental anguish from Defendants' "collective efforts to steal the Miners' family home." (Id. at ¶¶261-262.) Plaintiff alleges that had "Defendants collectively honored and acknowledged the Modification Agreement, Tiffany would be alive today." (Id. at ¶266.)

In Wisconsin, a claim for wrongful death is a tort action. *Christ v. Exxon Mobil Corp.*, 2015 WI 58, ¶21, 362 Wis. 2d 668, 866 N.W.2d 602("Certain relatives of tort victims are now also able to bring actions for wrongful death . . . Wrongful death actions are derivative tort actions."). A prerequisite to any claim for wrongful death based in negligence or otherwise "is the existence of a duty requiring the defendant to conform his conduct to a certain standard of care vis-à-vis the plaintiff. **Where no such duty exists, no liability may attach**." *Logarta v. Gustafson*, 998 F. Supp. 998, 1001 (E.D. Wis. 1998) (emphasis added)(internal citations omitted). JBA, as counsel litigating against the Miners, did not owe any duty to them. There can be no claims sounding in negligence, such as one for wrongful death, when there is no relationship between the parties sufficient to establish some duty.

Related to this concept, under Wisconsin law, an attorney is not generally liable to a third party for an act committed "within the scope of an attorney-client agency relationship" absent certain exceptions not applicable here. *See, e.g., Green Spring Farms v. Kersten*, 136 Wis.2d 304, 321–22, 401 N.W.2d 816, 823 (1987); *Yorgan v. Durkin*, 2006 WI 60, ¶27, 290 Wis. 2d 671, 715 N.W.2d 160 ("'[T]he well-established rule of law in Wisconsin is that absent fraud or certain public policy considerations, an attorney is not liable to third parties for acts committed in the exercise of [her] duties as an attorney.'"). Courts grant attorney immunity out of recognition that imposing

5

liability on an attorney acting within the scope of a client relationship would unduly strain an attorney's undivided duty to his or her client. *See Auric v. Cont'l Cas. Co.*, 111 Wis.2d 507, 513, 331 N.W.2d 325, 328 (1983) ("Where courts have shied away from allowing the imposition of liability, concern has been expressed that such liability may conflict with the duty an attorney owes to his client."). An attorney who acts in a professional capacity has qualified immunity for the actions she takes in assistance of her client. *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 242, 517 N.W.2d 658 (1994) (citing *Strid v. Converse*, 111 Wis. 2d 418, 429, 331 N.W.2d 350 (1983)); *Goerke v. Vojvodich*, 67 Wis. 2d 102, 105, 226 N.W.2d 211 (1975); *Langen v. Borkowski*, 188 Wis. 277, 301, 206 N.W. 181 (1925)("An attorney is immune from liability to third parties so long as the attorney pursues in good faith his or her client's interests on a matter fairly debatable in the law"). Wisconsin courts have long recognized that "[s]tatements made during judicial proceedings and quasi-judicial proceedings are absolutely privileged when the statements bear a proper relationship to the issue, i.e., are relevant to the proceeding." *Bergman v. Hupy*, 64 Wis. 2d 747, 749-51, 221 N.W.2d 898 (1974); *see also, Niedert v. Rieger*, 200 F.3d 522, 525 (7th Cir. 1999) (stating that under Wisconsin law, "witnesses are immune from civil liability for damages caused by false and malicious testimony . . . [including] statements made in pleadings, in affidavits or in open court . . . so long as the statements are relevant to the litigation."). The rule protects attorneys. *Snow v. Koeppl*, 159 Wis. 2d 77, 80-81, 464 N.W.2d 215 (Ct. App. 1990)("The rule extends to attorneys, witnesses and physicians appointed to examine a person in connection with judicial proceedings.")

The Wisconsin Supreme Court has affirmed this sound principle: "[t]his rule serves to protect the attorney-client relationship. To extend an attorney's liability to third parties not in privity with the attorney may create damaging effects on the defendant attorney's relationship with

6

1038670\308473553.v1

the client." *MacLeish v. Boardman & Clark LLP*, 2019 WI 31, ¶27; *Green Spring Farms*, 136 Wis.2d at 330 ("if an attorney must be responsible not only to his or her own client but also to a third-party nonclient, a potential conflict of interest may be inevitable, thus impairing an attorney's ethical obligations to represent his or her own client zealously within the bounds of the law.").

Like Wisconsin, other states throughout the country recognize attorney immunity. *See Pelham v. Griesheimer*, 92 Ill. 2d 13, 19, 64 Ill. Dec. 544, 547, 440 N.E.2d 96, 99 (1982)(The general rule in Illinois is that an attorney owes a duty of care only to his client and not to third parties.); *Brocato v. Prairie State Farmers Insurance Association*, 166 Ill. App. 3d 986, 988-89, 520 N.E.2d 1200, 1201-02, 117 Ill. Dec. 849(1988)(The reason for this limited liability is to protect the personal, highly confidential and fiduciary nature of the attorney-client relationship.); *Gold v. Vasileff*, 160 Ill. App. 3d 125, 127-28, 513 N.E.2d 446, 448, 112 Ill. Dec. 32 (1987)(since an attorney "must represent his client with zeal and undivided loyalty in adversarial matters," he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability.); *Schechter v. Blank,* 254 Ill. App. 3d 560, 564, 193 Ill. Dec. 947, 950, 627 N.E.2d 106, 109 (1993) ("To impose such liability on an attorney would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to his client. Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect."); *Hahn v. Satullo*, 156 Ohio App. 3d 412, 430, 2004-Ohio-1057, P69, 806 N.E.2d 567, 581 (10th Dist.)("Thus, absent any evidence of malice, we find nothing prohibits application of qualified immunity to bar plaintiffs' claim of invasion of privacy."); *Youngkin v. Hines, 546 S.W.3d 675,* 61 Tex. Sup. Ct. J. 1050 (2018) (applying attorney immunity to claims of common-law fraud and statutory fraud under Texas Business and

Commerce Code in which Plaintiff alleged attorneys had conspired to make misrepresentations and inducements to fraudulently deprive him of real property); *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677 ¶17 (dismissing invasion of privacy, negligent infliction of emotional distress, and breach of contract claims); *Franson v. Radich*, 735 P.2d 632, 635 (Or. Ct. App. 1987)(applying immunity to claim for intentional infliction of emotional distress).

Here, JBA, as the law firm hired by Shellpoint and 1900 Capital, owed no duty to the Miners in the foreclosure action. To hold otherwise would tilt the otherwise level adversarial process. Under the litigation privilege, any claim against JBA for wrongful death is barred. Therefore, the claim for wrongful death against JBA must be dismissed.

## II. PLAINTIFF'S CLAIM FOR WRONGFUL DEATH MUST BE DISMISSED BECAUSE PLAINTIFF ONLY PLEADS CONCLUSORY ALLEGATIONS TO ESTABLISH CAUSATION

The Plaintiff's claim for wrongful death concludes that "the excruciating stress and mental anguish caused by Defendants' collective conduct in trying to steal the Miners' family home culminated in Tiffany's untimely death." (ECF No. 31 at ¶260.) According to Plaintiff, Tiffany Miner's death was caused by hypertension that led to irreversible and fatal brain damage, and that the hypertension was caused by the stress and mental anguish from Defendants' "collective efforts to steal[2] the Miners' family home." (Id. at ¶¶229-262.) JBA contends that these conclusory

---

[2] JBA obviously disputes that it stole anything from the Miners. Such hyperbolic allegations are unmeasured and improper, especially when they are unsupported by facts (or reality) and based upon solely an implication of unnamed and unidentified criminal conduct on behalf of JBA. It is clearly inappropriate to make such inflammatory comments in publicly filed documents, no matter how zealously one represents their client.  It runs afoul, however, of Rule 11 to accuse an attorney of assisting its client in a crime without so much as an allegation of that conduct in the pleadings.  It is also contrary to Wisconsin SCR 20:8.2(a) which explains that "[a] lawyer shall not make a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicative officer, public legal officer, or candidate for election or appointment to judicial or legal office."  The allegation of theft amounted not only to a factually unsupported accusation of a crime, but it also implies the utilization of the courts to commit the crime. ABA Comment [3] to SCR 20:8.2 states that lawyers are encouraged to defend judges and courts that are unjustly criticized. That is what JBA is doing here. Plaintiff's baseless accusations further demonstrate the lack of merit of Plaintiff's argument. Such an accusation is beyond the bounds of fair adjudication.

allegations are insufficient to state a claim for wrongful death against it because Plaintiff did not plead enough to show that they were caused by JBA's conduct.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Id.* Moreover, "Wisconsin looks at a defendant's act to determine whether it was foreseeable that the act might cause injury or damage to someone." *Tesar v. Anderson*, 2010 WI App 116, ¶30, 329 Wis. 2d 240, 789 N.W.2d 351.

Here, Plaintiff's bare and conclusory allegations regarding Tiffany Miner's hypertension being caused by stress and mental anguish from Defendants collectively is insufficient to set forth the causal element of wrongful death. Without more, it would be unfair to require JBA to defend a claim with such broad consequences and claimed damages based upon some unclear assertion of wrongdoing that caused her death. Accordingly, the claim must be dismissed for failure to state a claim.

### III. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT MUST BE DISMISSED

In Count III of the Complaint, Miner asserts a claim against 1900 Capital and JBA for unjust enrichment. (ECF No. 31 at ¶¶159-165.) The elements of an unjust enrichment claim are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis. 2d 686, 688-89, 266 NW 2d 361 (1978); *S & M Rotogravure Service, Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977). Unjust enrichment rests on equitable principles and the remedy is measured strictly by the benefit conferred on the defendant,

not by any losses to the plaintiff. *See Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188, 557 N.W.2d 67 (1996). Recovery under unjust enrichment is premised on duty, not on agreement or intent of the parties. *Grossbier v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 173 Wis. 503, 508, 181 N.W. 746, 748 (1921). "[A]n action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987) (emphasis added).

Here, the unjust enrichment claim fails because Plaintiff has not alleged, and cannot allege, two necessary elements of the claim: (1) there was no benefit conferred on JBA by Plaintiff and (2) it is not inequitable for JBA to retain the attorney's fees it received from Shellpoint/1900 Capital here. JBA was retained by Shellpoint and 1900 Capital as their legal counsel to file a foreclosure action against the Miners based on an uncontested default on the subject loan. JBA's clients were 1900 Capital and Shellpoint. JBA owed a duty to 1900 Capital and Shellpoint to fulfill its obligations as counsel to both 1900 Capital and Shellpoint. JBA fulfilled its duties to 1900 Capital and Shellpoint, and the matter was voluntarily dismissed after a payoff of the Subject Loan. Although the attorney's fees for JBA were listed in the payoff statement, those fees were paid directly to Shellpoint/1900 Capital by Plaintiff. Shellpoint and 1900 Capital had an obligation to pay JBA its attorney's fees regardless of whether the Subject Loan was paid off or if it was not paid at all. Therefore, the only benefit that was conferred on JBA was conferred by Shellpoint and 1900 Capital, not by the Plaintiff.

Next, it is not inequitable for JBA to retain the attorney's fees for the foreclosure action because JBA owes no duty to the Plaintiff. Whether JBA owed a duty to Plaintiff is a question of law that can be decided on a motion to dismiss. *Hornback v. Archdiocese of Milwaukee*, 2008 WI

98, ¶14, 313 Wis. 2d 294, 752 N.W.2d 862 (whether Wisconsin courts recognize an alleged duty and how far the scope of such a duty extends may be questions of law determined judicially rather than questions of fact.) As more fully discussed in Section I, *supra*, regarding litigation privilege, JBA, as the attorney for Shellpoint and 1900 Capital, only owed a duty to Shellpoint and 1900 Capital. The Wisconsin Supreme Court reaffirmed this principle: "[t]his rule serves to protect the attorney-client relationship. To extend an attorney's liability to third parties not in privity with the attorney may create damaging effects on the defendant attorney's relationship with the client." *MacLeish v. Boardman & Clark LLP*, 2019 WI 31, ¶27; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 330, 401 N.W.2d 816, 826 (1987) ("if an attorney must be responsible not only to his or her own client but also to a third-party nonclient, a potential conflict of interest may be inevitable, thus impairing an attorney's ethical obligations to represent his or her own client zealously within the bounds of the law.") Therefore, the duty cannot be extended to exist between JBA and Plaintiff, so a claim for unjust enrichment also cannot be extended to a third party non-client of a law firm. There are no circumstances here warranting it inequitable for JBA to retain the attorney's fees it received from its client Shellpoint and 1900 Capital.

Finally, the nature of a claim for unjust enrichment is one sounding in a duty to another. Indeed, as *Grossbier* and *Watts* explain, the claim is premised upon an essential duty to return ill-gotten funds. In this case, the Plaintiff has not alleged what funds JBA received that were ill-gotten (there are none). And the nature of litigation reveals there never could be such an allegation. JBA was paid attorney's fees from a client for pursuing a foreclosure. As counsel for the litigants opposing the Miners in the underlying foreclosure, there can never be a duty running to the Miners sufficient to claim that the fees paid give rise to an unjust enrichment claim. Indeed, such a finding

would turn the litigation process on its ear if opponents could claim opposing counsel owe them duties. Consequently, the unjust enrichment claim against JBA must be dismissed.

## IV. PLAINTIFF'S FDCPA CLAIMS AGAINST JBA MUST BE DISMISSED

Plaintiff makes numerous claims against JBA for violation of the FDCPA. The sections of the FDCPA cited by Plaintiff are the following:

Section 1692d states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

Section 1692e states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . . 15 U.S.C. § 1692e.

Section 1692f states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

As an initial matter, portions of Plaintiff's FDCPA claim against JBA fail due to the one-year statute of limitation. *See* 15 U.S.C. § 1692k(d). The court looks to the "specific violations alleged" when determining the "date on which the violation occurs." *See Lockhart v. HSBC Fin.*

*Corp.*, 2014 U.S. Dist. LEXIS 1050866, at *31 (N.D. Ill. Aug. 1, 2014); *see also Woltring v. Specialized Loan Servicing LLC,* Case No. 14-cv-222, 2014 U.S. Dist. LEXIS 81433, *14 (E.D. Wis. June 16, 2014). In determining the time the violation occurred, "the clock starts to run when the allegedly wrongful litigation begins." *See id.* (citing *Judy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2010 U.S. Dist. LEXIS 8027, at *3 (N.D. Ill. Jan. 29 2010); *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997)); *see also, McDermott v. Barton,* Case No. 14-cv-704, 2014 U.S. Dist. LEXIS 165656, *9 (S.D. Ill. Nov. 26, 2014); *Gajewski v. Ocwen Loan Servicing, LLC,* Case No. 14-cv-9230, 2015 U.S. Dist. LEXIS 83094 *10 (N.D. Ill. June 25, 2015).

Here, Plaintiff filed his Complaint on January 25, 2021. Any act or omission which occurred before January 25, 2020, which includes the filing of the foreclosure complaint, cannot therefore form the basis of an FDCPA violation as they are time barred.

Moreover, the Seventh Circuit has ruled that "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *Bentrud v. Bowman*, 794 F.3d 871, 875 (7th Cir. 2015) (citing *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 474 (7th Cir. 2007)) (holding that § 1692f of the FDCPA only applies to non-judicial action and that state court proceedings are outside the scope of that section). As explained more fully below, *Bentrud* and *Beler* foreclose Plaintiff's § 1692f claims, the Court should consider Plaintiff's entire theory, including the § 1692e and 1692d claims, in the context of *Bentrud* and *Beler*. Such consideration is important because Plaintiff is complaining about JBA's conduct in litigating a state court foreclosure lawsuit, governed by its own state laws. This approach is consistent with the wealth of case law on the issue of what narrow conduct related to state court collection litigation, if any, can form the basis for FDCPA liability. *See id.*; *see also O'Rourke v.*

*Palisades Acquisitions XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (there can be no 1692e violation for debt collector's attempts to deceive a judge with fake documents attached to a collection complaint).

### A. Claims Under § 1692f Must Be Dismissed

Plaintiff claims that JBA violated §§ 1692f and f(1) by attempting to collect amounts not authorized by the terms of the Subject Loan and a purported modification agreement by collecting amounts past due, late charges, inspection fees, and attorney's fees. (Id. at ¶248.) Plaintiff alleges that JBA violated § 1692f by filing the foreclosure case and subsequent Motion for Default Judgment despite the fact that the Subject Loan was current as of June 1, 2019 pursuant to the terms of the Modification Agreement.(Id. at ¶¶248-249.) Plaintiff alleges that any attempt to collect the aforementioned amounts was not authorized by the Subject Loan, purported modification, or applicable state and federal laws.

First, it should be noted that the allegations do not allege JBA did anything wrong. Plaintiff alleges the terms of the Subject Loan were modified effective June 1, 2019, but the modification that occurred on September 4, 2019 was retroactive to June 1, 2019 because it and payments were needed from June to September 2019 to make the Subject Loan current. Plaintiff was obligated to make all payments that would have been made to modify the loan effective June 1, 2019 as they had originally thought was going to occur. The factual allegation that the Miners were saving payments from June 2019 until the modification was implemented is nowhere contained within the Amended Complaint, despite the opportunity to add it when the Complaint was amended. Because these amounts were not provided with the retroactive modification, the Amended Complaint reveals the modification was never consummated, and the Miners owed the amounts under the Subject Loan as if it was not modified. JBA proceeded to collect these amounts for 1900

14

Capital and Shellpoint properly. Moreover, when the payoff statement was provided to Courtenay Miner, he paid the amount in full.

The Seventh Circuit has clearly acknowledged that Congress did not intend the FDCPA to create a federal review mechanism for state court proceedings in the general context of Section 1692f. In *Bentrud*, Bowman Heintz filed a state court collection lawsuit against Bentrud for collection of a defaulted credit card debt. Bentrud invoked the arbitration provision in his credit card agreement. The court stayed the case allowing Bentrud thirty days to initiate arbitration. If Bentrud failed to initiate arbitration within that time period, the court ordered that the stay would be "automatically dissolved." *Id*. at 872. Bentrud failed to meet the thirty day deadline and more than one month later Bowman Heintz filed a motion for summary judgment against him. 794 F.3d at 875.

Bentrud claimed in federal court that Bowman Heintz, the debt collection law firm, violated the FDCPA when it filed a motion for summary judgment against him in state court after he elected arbitration during the time of the stay. In rejecting Bentrud's theory the court stated:

> The FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law. But that is what Bentrud is attempting to do here; he seeks to transform the FDCPA into an enforcement mechanism for the arbitration provision in his credit card agreement….
>
> …If Bentrud is concerned about Bowman Heintz resuming litigation after he elected arbitration- a procedural oddity, at worst- his remedy sounds in breach of contract, not the FDCPA. A contrary ruling would require us to declare that adherence to an arbitration provision in a contract, even in the face of a state court order to the contrary, is essential to fair debt collection.

*Id*. at 875 (citing *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007)).

The court also recognized that if Bowman Heintz failed to prosecute the case after the time for arbitrating the case expired, the firm could be subject to a malpractice claim by its client:

> Bentrud, then, would have Bowman Heintz choose between dismissal for failure to prosecute and a possible malpractice claim from Capital One, on the one hand, and a potential, albeit uncertain, FDCPA violation, on the other. That is an easy choice for Bowman Heintz. In filing its second motion for summary judgment, Bowman Heintz made the only choice that a reasonable advocate in its position would have made. And that choice does not equate to an unfair or unconscionable means of attempting to collect a debt.

*Id*. at 876.

To the extent Plaintiff claim that JBA's collection of the amounts due on the Subject Loan in the underlying foreclosure somehow runs afoul of the FDCPA, the claim fails. As in *Bentrud*, here, a reasonable advocate would preserve his or her client's right to collect all amounts due rather than risk the potential for waiving the client's rights. Collecting an amount that is actually due from a party represented by an attorney does not equate to a false, deceptive or misleading representation. Moreover, whether collecting these amounts was a violation of state law is something for the state court and not to be enforced under the FDCPA.

Finally, Plaintiff's claims under § 1692f are duplicative of his claims under §§ 1692e and 1692d. Conduct that is specifically addressed in another section of the FDCPA may not be used as a basis for a 1692f claim. *See Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015) (collecting cases); *Bencomo v. Forster & Garbus LLP*, No. 18-CV-1259-JPS, 2019 U.S. Dist. LEXIS 117139, 2019 WL 3082502, at *5 (E.D. Wis. July 15, 2019) (dismissing § 1692f claim because it was duplicative of another FDCPA claim); *Spaulding v. Tri-State Adjustments, Inc.*, No. 18-cv-377-wmc, 2019 U.S. Dist. LEXIS 216287, at *12 (W.D. Wis. Dec. 11, 2019). There is no doubt that the §§ 1692e and 1692f claims are duplicative in that they all seek to recovery from JBA for filing the foreclosure case, the Motion for Default Judgment, and the payoff

statement. (See ECF No. 1 at ¶¶240, 244-245,248, 249-252.) Accordingly, the Plaintiffs claim under § 1692f must be dismissed.

**B. Claims Under § 1692d Must Be Dismissed**

Plaintiff's remaining FDCPA claims are similarly deficient. First, Plaintiff seeks to assert claims under the catchall provision of Section 1692d. Plaintiff claims:

> Johnson Blumberg violated §1692d by filing and prosecuting a frivolous foreclosure case against the Miners and the subject property in an effort to collect the subject loan. As set forth extensively above, Johnson Blumberg filed a foreclosure case and subsequent Motion for Default Judgment asserting false default amounts despite having actual knowledge that the foreclosure proceeding was without a factual or legal basis. See Paragraphs ¶¶90-91. Such conduct is objectively oppressive and abusive and violates the FDCPA.

(ECF No. 31 at ¶241.) Based on this language, Plaintiff does not assert any separate basis for his boilerplate 1692d claims against JBA that is any different from his claim under § 1692f. Filing a foreclosure complaint and eventual motion for default judgment against the Miners is not sufficient to be considered harassing, unfair or unconscionable. Moreover, as stated above, because the Miners did not make payments for the three months after the loan was modified retroactively, the foreclosure action was proper as was the collection action. It was not harassing, unfair or unconscionable for JBA to file a mortgage foreclosure complaint or Motion for Default Judgment. If the Plaintiff claims that JBA violated Wisconsin foreclosure law, the FDCPA does not take that state-law dispute and move it to federal court. State court judges are fully capable of monitoring their own dockets, and handling the disputes between the litigants in front of them.

**C. Claims Under § 1692e Must Be Dismissed**

Plaintiff claims that JBA violated §§ 1692e, e(2)(A), and e(10) by falsely representing the default amount and the balance owed on the subject loan in in the foreclosure case complaint and subsequent Motion for Default Judgment that was filed on March 10, 2020 in the foreclosure case

17

and by providing the April 2020 payoff correspondence to Plaintiff. (Id. at ¶¶244-245.) Section 1692e generally prohibits the use of false, deceptive, or misleading representations. 15 USC § 1692e. Plaintiff's Amended Complaint fails to allege what statement in the foreclosure complaint, Motion for Default Judgment, or payoff statement was false, deceptive, or misleading. Moreover, as stated above, because the Miners did not make payments for the three months after the loan was modified retroactively, the foreclosure action was proper (as was the collection activity). Because no answer was on file, the Plaintiff was in default, and it was therefore not improper to file a Motion for Default. Moreover, because Plaintiff never informed JBA of any incorrect amounts in the payoff statement, it was not improper to provide a payoff statement.[3] Finally, Plaintiff's §1692e claim is not the proper vehicle to review state court pleadings about whether there were misrepresentations in the pleadings. *See Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) ("Section 1692e forbids debt collectors to tell lies but does not suggest that federal courts are to review state-court decisions about whether lies have been told. Section 1692e does not even hint that federal courts have been authorized to monitor how debt-collection litigation is handled in state courts."). Therefore, the Plaintiff's FDCPA claim under § 1692e must be dismissed.

---

[3] In fact, Plaintiff paid the payoff amount in full.

## **CONCLUSION**

For the foregoing reasons, JBA requests that all claims against it be dismissed.

Dated this 7th day of July, 2021.

> *Electronically signed by Alyssa A. Johnson*
> Justin Penn, ARDC 6283726
> Alyssa A. Johnson, State Bar No. 1086085
> Attorneys for Defendant JOHNSON,
> BLUMBERG & ASSOCIATES, LLC
> **HINSHAW & CULBERTSON LLP**
> 100 E. Wisconsin Avenue Suite 2600
> Milwaukee, WI 53202
> Phone No. 414-276-6464
> Fax No. 414-276-9220
> E-mail Address(es):
> jpenn@hinshawlaw.com
> ajohnson@hinshawlaw.com