COURTENAY M. MINER,             )

                                    )      Case No. 2:21-cv-00107

          Plaintiff,          )

                                      )

     v.                           )

                                      )      Hon. Lynn Adelman

SPECIALIZED LOAN SERVICING LLC;    )      Judge Presiding

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE )

SERVICING; 1900 CAPITAL TRUST III, BY   )

U.S. BANK TRUST NATIONAL ASSOCIATION )

NOT IN ITS INDIVIDUAL CAPACITY BUT   )

SOLELY AS CERTIFICATE TRUSTEE a/k/a  )

MCM CAPITAL, LLC; and JOHNSON,      )

BLUMBERG & ASSOCIATES, LLC,       )

                                        )

          Defendants.      )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, NewRez LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and 1900 Capital Trust III, by U.S. Bank Trust N.A., as Certificate Trustee a/k/a MCM Capital, LLC ("Trustee"), (Shellpoint and Trustee are referred to herein collectively as "Defendants"), by their counsel, submit the following Memorandum in Support of their Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiff, Courtenay M. Miner ("Plaintiff").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## Table of Contents

Introduction ........................................................................................................................... 1

Background Facts and Allegations ....................................................................................... 1

Standard of Review .............................................................................................................. 6

Argument .............................................................................................................................. 6

   I.     The Economic Loss Doctrine Bars Plaintiff's Tort Claims ........................................ 6

   I.     Plaintiff's Breach of Contract Claim (Count I) Fails Because the Plaintiff Does Not and Cannot Allege the Existence of an Enforceable Contract .................................. 9

   II.    Plaintiff's Breach of Duty of Good Faith and Fair Dealing Claim (Count II) Should be Dismissed. .................................................................................................. 13

   III.   Plaintiff's Unjust Enrichment (Count III) Claim Should be Dismissed. ................. 14

   IV.   Plaintiff's Violation of the Wisconsin Deceptive Trade Practices Act (Count IV) Claim Should Be Dismissed. ..................................................................................... 14

   VI.   Plaintiff's Intentional Infliction of Emotional Distress Claim (Count VI) Should be Dismissed. ............................................................................................................... 18

   VII.   Plaintiff's Fraudulent Misrepresentation Claim (Count VII) Should be Dismissed ................................................................................................................................ 20

   VIII.  Plaintiff's FDCPA Claim (Count VIII) Should Be Dismissed ................................ 21

   IX.   Plaintiff's Wrongful Death (Count X) Claim Should be Dismissed. ....................... 25

   X.    Plaintiff's Claimed Violation of Wisconsin Mortgage Banking Act (Count X) Should be Dismissed ............................................................................................... 27

# TABLE OF AUTHORITIES

## <u>CASES</u>

*188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730 (7th Cir. 2002) ........................................... 2, 4

*Alsteen v. Gehl,* 124 N.W.2d 312 (Wis. 1963) ........................................................................ 18

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................... 6, 27

*Austin v. Ford Motor Co.,* 273 N.W.2d 233 (Wis. 1979) ........................................................ 26

*Avudria v. McGlone Mortg. Co.*, 2011 WI App 95 (Wis. Ct. App. 2011) ................................ 28

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................................ 6, 27

*Bartholomew v. Wisconsin Patients Comp. Fund & Compcare Health Servs. Ins. Corp.*

2006 WI 91 (2006) .................................................................................................................. 25

*Bonfiglio v. Citifinancial Servicing, LLC*, 2015 U.S. Dist. LEXIS 128215 (N.D. Ill. 2015) ....... 11

*Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016) ................................... 24

*Brew City Redevelopment Grp., LLC v. The Ferchill Grp.,* 2006 WI App 39 (2006) .................. 9

*Cannon v. Wells Fargo Bank, N.A.,* 917 F.Supp.2d 1025 (N.D. Cal. 2013) .............................. 11

*Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545 (6th Cir. 1995) .............................. 8

*Carroll v. Stryker Corp.,* 658 F.3d 675 (7th Cir. 2011) ............................................................ 14

*Cohen v. Mortgage Elec. Registration Sys. Inc.,*

2009 U.S. Dist. LEXIS 111188 (D. Minn. 2009) ...................................................................... 11

*Dawoudi v. Nationstar Mortg. LLC.,* 448 F. Supp. 3d 918 (N.D. Ill. 2020) .............................. 17

*DiGiacomo v. Statebridge Co., LLC,* 2015 U.S. Dist. LEXIS 82496 (D.N.J. 2015) .................... 11

*Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54 (Wis. 2003) ..................................................... 21

*Douzable v. Newrez*, 019 U.S. Dist. LEXIS 231328 (S.D. Fla. 2019) ......................................... 24

*Enters. v. Kellogg Sales Co.,* 2005 WI 111(2005) ..................................................................... 20

*Fricano v. Bank of Amer. N.A.,* 2016 WI App. 11 (Wis. App. 2016)............................................ 15

*Garcia v. HSBC USA, N.A.* 2009 U.S. Dist. LEXIS 114299 (N.D. Ill. 2009)............................. 17

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) ....................................... 22, 24

*Gifford v. PHH Mortg. Corp.,* 2018 U.S. Dist. LEXIS 196630 (W.D.Wis. Nov. 2018)............... 7

*Golbeck v. Johnson Blumberg & Assocs., LLC*

2017 U.S. Dist. LEXIS 112493 (N.D. Ill. 2017) ....................................................................... 12

*Golden Dipt. Co., Div. of DCA Food Industries, Inc. v. Systems Engineering & Mfg. Co.,*

465 F.2d 215 (7th Cir. 1972) .................................................................................................... 10

*Gajewski v. Ocwen Loan Servicing, LLC,* 2015 U.S. Dist. LEXIS 83094 (N.D. Ill. 2015) ......... 23

*Green Tree Servicing, LLC v. Lorang*, 367 Wis. 2d 350 (Wis. Ct. App. 2016) .......................... 28

*Hukic v. Aurora Loan Servs. LLC,* 588 F.3d 420 (7th Cir. 2009)............................................... 18

*Hunter v. Sterling Bank,* 588 F. Supp. 2d 645 (E.D. Pa. 2008) ...................................................... 8

*In re POC Props, LLC,* 580 B.R. 504 (Bankr. E.D. Wis. 2017) .................................................... 7

*Ins. Co of N. Am. v. Cease Elec. Inc.,* 2004 WI 139 (Wis. 2004).................................................. 8

*Iroanyah v. Bank of Am.,* 753 F.3d 686 (7th Cir. 2014) .............................................................. 17

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)..................................................................... 23

*Jones v. Select Portfolio Servicing, Inc.,* 2018 U.S. Dist. LEXIS 75886 (S.D.Fla. 2018) ........... 24

*Judy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*

2010 U.S. Dist. LEXIS 8027 (N.D. Ill. 2010) .......................................................................... 23

*K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.,* 2007 WI 70 (Wis. 2007)...................... 15

*Knopp v. Wells Fargo Bank, N.A.,* 2017 U.S. Dist. LEXIS 116555 (N.D.Ill. 2017)................... 17

*Lambert Corp. v. Evans,* 575 F.2d 132 (7th Cir. 1978) ............................................................... 10

*Leahy-Fernandez v. Bayview Loan Servicing, LLC,* 159 F. Supp. 35 1294 (M.D. Fla. 2016)..... 25

*Liebhart v. SPX Corp.*, 2017 U.S. Dist. LEXIS 181414 (W.D. Wis. 2017) ............................... 19

*Lockhart v. HSBC Fin. Corp.*, 2014 U.S. Dist. LEXIS 1050866 (N.D. Ill. 2014) ................ 22, 23

*Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468 (Wis. Ct. App. 1996)………...19

*Maryland Staffing Servs. v. Manpower, Inc.*, 936 F.Supp. 1494 (E.D. Wis. 1996)……………..19

*Martin Elecs. USA, Inc.*, 2015 U.S. Dist. LEXIS 42016 (W.D. Wis. 2015) ............................... 14

*Metro. Ventures, LLC v. GEA Assocs.*, 2006 WI 71 (Wis. 2006)................................................ 13

*Mathers v. HSBS Bank*, 2018 WL 3831529 (N.D. Ill. 2018)....................................................... 17

*McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312 (Minn. 1987).................. 8

*McCauley v. City of Chicago*, 671 F. 3d 611 (7th Cir. 2011)........................................................ 6

*McDermott v. Barton*, 2014 U.S. Dist. LEXIS 165656 (S.D. Ill. 2014)...................................... 23

*McElvy v. Nationstar Mortg., Inc.*, 2014 U.S. Dist. LEXIS 189563 (E.D. Va. 2014)................. 25

*Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997) ........................................................................... 23

*National Operating, L.P. v. Mut. Life Ins. Co. of New York*, 2001 WI 87 (Wis. 2001) ................ 8

*Non Typical Inc. v. Transglobal Logistics Group Inc.*

2011 U.S. Dist. LEXIS 50597 (E.D. Wis. 2011) .......................................................................... 13

*Petty v. Countrywide Home Loans, Ins.*, 2013 U.S. Dist. LEXIS 62042 (W.D. Va. 2013).......... 11

*Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978)............................................................ 14

*Pulsifer v. U.S. Bank N.A. (Pulsifer)*, 2014 U.S. Dist. LEXIS 133532 (E.D. Wis. 2014) ........... 20

*Ramsden v. Farm Credit Services of North Central Wisconsin ACA*

223 Wis. 2d 704 (Ct. App. 1998)................................................................................................... 20

*Schnable v. Ford Motor Co.*, 195 N.W.2d 602 (Wis. 1972)........................................................ 26

*Soto v. Gibbons*, 2017 U.S. Dist. LEXIS 36794 (W.D. Wis. 2017) ....................................... 25, 26

*Spencer .v. DHI Mortgage Co., Ltd.*, 642 F.Supp.2d 1153 (E.D. Cal. 2009) ................................ 8

*Spivey-Johnson v. SM&P Util. Res., Inc.*, 2007 U.S. Dist. LEXIS 1814 (E.D. Wis. 2007) ........ 19

*Srok v. Bank of Am.,* 2015 U.S. Dist. LEXIS 151025 (E.D. Wis. 2015) ................................... 7, 8

*Stegall v. SN Servicing Corp.,* 2017 U.S. Dist. LEXIS 35201 (E.D. Pa. 2017) ........................... 25

*Tang v. C.A.R.S. Prot. Plus, Inc.,* 2007 WI App 134 (Wis. App. 2007) ...................................... 13

*Taylor v. JPMorgan Chase Bank, N.A.,* 958 F.3d 556 (7th Cir. 2020) ................................. 12, 18

*Tietjen v. Ninneman,* 2017 U.S. Dist. LEXIS 222308, (E.D. Wis. 2017) ...................................... 9

*Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32 (2004) ............................................................ 7

*Trunzo v. Citi Mortg.,* 876 F.Supp.2d 521 (W.D. Pa. 2012) ....................................................... 11

*Tyler v. Bank of N.Y. Mellon,* 2020 U.S. Dist. LEXIS 91267 (N.D. Ill. 2020) ........................... 12

*United States v. Shah,* 193 F. Supp. 2d 1091 (E.D. Wis. 2002) ................................................... 10

*US Bank N.A. v. Tellock*, 2020 Wisc. App. LEXIS 538 (Wis. Ct. App. 2020) ........................... 28

*Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012) ................................................ 12

*Woltring v. Specialized Loan Servicing LLC*, 56 F. Supp. 3d 947 (E.D. Wis. 2014) ............. 18, 22

*Zimmerman v. Logemann*, 2009 U.S. Dist. LEXIS 111411 (W.D. Wis. Nov.30, 2009) .......... 7, 15

### FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 1026.36 ................................................................................................................ 16, 17

12 C.F.R. § 1026.41 ....................................................................................................................... 24

12 U.S.C. § 1639f ..................................................................................................................... 16, 17

15 U.S.C. § 1640 ............................................................................................................................ 17

15 U.S.C. § 1692k ......................................................................................................................... 22

U.S.C. §§ 1692c, 1692d, 1692e, ...................................................................................... 22, 23, 25

### OTHER AUTHORITIES

Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPB GUIDANCE, 2013 WL 9001249 (C.F.P.B. 2013)…………………………………………………………24

**RULES**

Fed. R. Civ. P. 12 ................................................................................................. 2, 27

**STATE STATUTES**

Wis. Stat. § 100.18 ................................................................................................... 15

Wis. Stat. § 224.71 ................................................................................................... 27

Wis. Stat. § 224.80 ................................................................................................... 27

Wis. Stat. § 895.03 ................................................................................................... 25

## Introduction

For his Complaint, Plaintiff attempts to plead nine claims against Shellpoint and eight against Trustee, to wit: (1) Breach of Contract; (2) Breach of the Duty of Good Faith and Fair Dealing; (3) Unjust Enrichment; (4) Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18; (5) Violation of the federal Truth In Lending Act, 15 U.S.C. § 1601, *et seq*; (6) Intentional Infliction of Emotional Distress; (7) Fraudulent Misrepresentation; (8) Violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; (9) Wrongful Death; and (10) violation of the Wisconsin Mortgage Banking Act, Wis. Stat. § 224.71, *et seq.*.

The claims arise from the mortgage loan extended to Plaintiff and Tiffany D. Miner who tragically passed away last year. Briefly, Plaintiff premises his claims on the alleged failure of the defendants to implement and recognize a loan modification agreement that he alleges was enforceable against the parties effective June 1, 2019. According to Plaintiff, the failure of Shellpoint and Trustee to implement and board this loan modification caused him and his deceased wife damages and caused Mrs. Miner's death.

However, as detailed herein, the Plaintiff's claims fail as a matter of law against Trustee and Shellpoint for a variety of reasons. Therefore, the Court should enter an order dismissing all the claims with prejudice as to Trustee and Shellpoint pursuant to Fed. R. Civ. P. 12(b)(6).

## Background Facts and Allegations

This matter concerns a mortgage loan that M&I Marshall and Ilsey Bank extended on March 21, 2005 to Courtenay M. Miner and Tiffany D. Miner (collectively, "Borrowers") in the original principal amount of $85,000.00 (the "Loan"). *See* FAC at ¶ 11; *see also*, Ex. 1, the Mortgage, which is attached hereto. A Mortgage recorded against the real property commonly

known as 4918 N. 66th Street, Milwaukee, Wisconsin ("Property") secures the Loan. *Id*. Trustee subsequently acquired the Loan. *Id.* at ¶ 15.

The Borrowers defaulted on the Loan sometime before the service transfer of the Loan to Specialized Loan Servicing ("Specialized"). *See* FAC at ¶ 17. Plaintiff does not allege or claim that any act or omission of any defendant caused this default on the Loan. *See generally,* FAC. Plaintiff alleges that on or about January 9, 2019 while Specialized serviced the Loan, they were offered a trial period plan (the "TPP") towards a modification of the Loan. *See* FAC at ¶¶ 24-26. A true and correct copy of the January 9, 2019 correspondence from Specialized containing the TPP offer ("TPP Offer Letter") is attached hereto as Exhibit 2. *See, 188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (a court may consider documents attached to motion to dismiss if referenced in complaint and central to plaintiff's claims). Plaintiff alleges that the TPP consisted of three payments in the amount of $704.75 with the first payment due on February 1, 2019. *Id.* Plaintiff alleges that the borrowers made the required payments in the months that they were due. *Id.* at ¶¶ 27-29.

The TPP Offer Letter states, in part:

"You are approved to enter into a trial period plan. This is the first step toward qualifying for a more affordable mortgage payments…"

"To accept this offer, you must make the first monthly 'trial period payment' by the date shown below. To be approved for a permanent modification, you must make the following period payments in a timely manner…"

"After you make all trial period payments in a timely manner and submit all required documents, your mortgage will be permanently modified as described herein. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) If each trial period payment is not received by Specialized Loan Serving [sic] LLC ("SLS") in the month in which it is due, your loan will not be modified under the terms described in this offer."

"The terms of your trial period plan are effective on the date you make your first trial period payment, provided (i) you make such payment on or before 2/1/2019

and (ii) your loan is at least 30 days or more delinquent on the date you make such payment. You and we agree that:

> If you accept this offer as described above and otherwise comply with the terms of the trial period plan, we will not proceed to foreclosure sale during the trial period
>
> &ast;  &ast;  &ast;
>
> - You agree that the servicer will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. …
>
> - The servicer's acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure cases) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.
>
> &ast;  &ast;  &ast;

*See* TPP Offer Letter (Ex. 2); *see also,* FAC at ¶¶ 25-26.

Per the FAC, on May 22, 2019, Specialized informed the Borrowers that it returned their second TPP payment due to insufficient funds resulting in Specialized cancelling the TPP and modification. *See* FAC at ¶¶ 35-36. Borrowers disputed the denial of the TPP. *Id.* at ¶¶ 37-39. Following an investigation, Specialized admitted its error, acknowledged that the second TPP payment was received, and agreed to honor the modification. *See* FAC at ¶ 41.

Shortly after Specialized's acknowledgment of the purported error, servicing of the Loan transferred to Shellpoint effective June 7, 2019. *See* FAC at ¶ 42. A representative for Specialized allegedly advised the Borrowers to continue to remit payments in the amount of $704.75 to Shellpoint, and that Shellpoint would honor the loan modification. *Id.* at ¶¶ 45-46.

Plaintiff further alleges that despite the assurances from Specialized, Shellpoint did not acknowledge the loan modification and instead continued to treat the Loan as in default. *See*

FAC at ¶¶ 49-53.  Plaintiff claims that a Shellpoint representative informed the Borrowers that any payment they made "would not be applied to principal because the [Loan] was in default." *Id.* at ¶ 51.

Borrowers disputed the denial of the modification with Shellpoint and mailed proof of the TPP and the modification with Specialized to Shellpoint. *See* FAC at ¶ 53.  Plaintiff alleges that "[a]fter acknowledging receipt of the proof documents, a Shellpoint representative advised Tiffany that Shellpoint would honor the permanent loan modification and that Shellpoint was working with [Specialized] to memorialize the permanent loan modification." *Id.* at ¶ 57.

Plaintiff asserts that despite Shellpoint acknowledging that it would honor the modification, Shellpoint "continued to harass the [Borrowers] with default notices." *See* FAC at ¶ 58.  As alleged by Plaintiff these include: (1) a "Welcome Letter" dated June 17, 2019; (2) a mortgage statement dated June 22, 2019; (3) a default notice dated July 19, 2019, and (4) a mortgage statement dated March 19, 2020. *Id.* at ¶¶ 59-66, 97-98.

On September 4, 2019, Shellpoint allegedly mailed the Borrowers the documents to "finalize the permanent loan modification" (the "Loan Modification Agreement"). *See* FAC at ¶¶ 73-75.  Borrowers executed the Loan Modification Agreement and returned it to Shellpoint on September 17, 2019. *Id.* at ¶ 76.  However, Shellpoint supposedly refused to counter-sign and return the Loan Modification Agreement, because the Loan "was in default for months that post-date June 1, 2019, the effective date of the Modification Agreement." *Id.* at ¶ 77.  A true and correct copy of the Loan Modification Agreement provided by Shellpoint and executed by Borrowers (the "Loan Modification Agreement") is attached hereto as Exhibit 3. *See 188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (a court may consider documents attached to motion to dismiss if referenced in complaint and central to plaintiff's claims).

Plaintiff does not dispute that the Borrowers failed to remit payments on the Loan after the service transfer from Specialized to Shellpoint, but claims that Shellpoint informed the Borrowers that "any payment made by the [Borrowers] would not by applied to principal because the [Loan] was in default." *See* FAC at ¶¶ 51, 78.

By executing the Loan Modification Agreement, the Borrowers agreed and acknowledged that:

> I understand that after I sign and return the original version of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied. *See* Loan Modification Agreement (Ex. 3), p. 1.

> Section 2 of the Loan Modification Agreement further provided that:

> A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.

> B. The Loan Documents will not be modified ***unless and until (1) the Lender accepts this Agreement by signing and returning a copy of it to me***, and (ii) the Modification Effective Date, as set forth in Section 3 has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement. *See* Loan Modification Agreement (Ex. 3), § 2 (emphasis added).

> The Borrowers also agreed by executing the Loan Modification Agreement that:

> This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender. *See* Ex. 3, the Loan Modification Agreement at § 4 (B).

On November 27, 2019, Defendant Johnson Blumberg & Associates LLC ("Johnson Blumberg") filed a foreclosure complaint on behalf of Trustee in the Circuit Court of Milwaukee County, Case No. 2019-CV-009095 (the "Foreclosure Case"). *See* FAC at ¶ 87.

Plaintiff alleges that Tiffany Miner suffered a fatal heart attack on January 28, 2020.  *See* FAC at ¶ 94.  Plaintiff claims that Tiffany Miner did "not have any pre-existing conditions and was relatively healthy at the time of her death."  *Id.* at ¶¶ 95, 114.

Per the FAC, Plaintiff paid off the Loan in May 2020, and the Foreclosure Case was dismissed on May 22, 2020.  *See* FAC at ¶¶ 104-106.

## Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain allegations that 'state a claim to relief that is plausible on its face.'"  *See e.g., McCauley v. City of Chicago*, 671 F. 3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1967 (2007)).  "A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In evaluating the sufficiency of a complaint under the *Twombly*/*Iqbal* standard, the court should "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  *McCauley*, 671 F.3d at 616 (citing *Ashcroft*, 129 S. Ct. at 1951).  A plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level."  *Id.* (citing *Twombly*, 550 U.S. at 555).

## Argument

### I.     The Economic Loss Doctrine Bars Plaintiff's Tort Claims.

Plaintiff attempts to assert various tort claims premised upon the purported breach of the TPP and Loan Modification Agreement.  *See* FAC at ¶¶ 193-199 (IIED – Count VI); *id.,* ¶¶ 200-

206 (Fraudulent Misrepresentation – Count VII); *id.*, ¶¶ 255-267 (Wrongful Death – Count X). Wisconsin law bars the recovery under a tort theory of liability for claims premised on breaches of contracts pursuant to the "economic loss doctrine."

The "economic loss doctrine recognizes that whether a product meets a certain level of performance or a purchaser's expectations is not a matter of societal interest but rather is a matter of contract." *Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶ 28, 677 N.W.2d 233 (citations omitted); *see also, Gifford v. PHH Mortg. Corp.,* Case No. 18-cv-260, 2018 U.S. Dist. LEXIS 196630, *14 (W.D.Wis. Nov. 19, 2018).

Courts in Wisconsin have found that mortgage loans are contracts for the sale of a product (*i.e.* the mortgage loan) and not one primarily for services, and consequently, the economic loss doctrine applies as a matter of law. *See Zimmerman v. Logemann*, Case No. 09-cv-210, 2009 U.S. Dist. LEXIS 111411, * 7-8 (W.D. Wis. Nov. 30, 2009) (applying economic loss doctrine); *Srok v. Bank of Am.,* Case No. 15-cv-239, 2015 U.S. Dist. LEXIS 151025, *7 (E.D. Wis. Nov. 6, 2015) (same); *but see, In re POC Props, LLC,* 580 B.R. 504, 511-12 (Bankr. E.D. Wis. 2017) (deciding that economic loss doctrine did not apply); *see also, Gifford*, 2018 U.S. Dist. LEXIS 196630, at *15-17 (discussing split of decisions and determining that in some instances a tort claim arising from a mortgage loan contract could concern the provisions of services).

As explained by the court in *Zimmerman,* mortgage loan contracts are primarily agreements for the provision of a product and not a service. *Zimmerman,* 2009 U.S. Dist. LEXIS at * 23-25. The court supports its reasoning by pointing out that mortgages are governed by Article 9 of the Uniform Commercial Code ("UCC") controlling secured transactions. *Id.* at * 23 (citing *National Operating, L.P. v. Mut. Life Ins. Co. of New York,* 2001 WI 87, ¶¶ 50-51, 630

N.W.2d 116, 128 (Wis. 2001); *Spencer v. DHI Mortgage Co., Ltd.,* 642 F.Supp.2d 1153 (E.D. Cal. 2009) (applying economic loss doctrine); *Hunter v. Sterling Bank,* 588 F.Supp.2d 645, 651-52 (E.D. Pa. 2008) (same)).  As noted by the Wisconsin Supreme Court, the UCC governs and controls contracts for the sale of goods, and the economic loss doctrine applies for the sale of products, in part, because of the additional protections afforded to purchasers under the UCC. *See, Ins. Co of N. Am. v. Cease Elec. Inc.,* 2004 WI 139, ¶¶ 29-37, 688 N.W.2d 462, 468-470 (Wis. 2004) (finding that the inapplicability of the UCC to be a "particularly significant" basis for the economic loss doctrine not to apply to service contracts) (citing *Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545, 550 (6th Cir. 1995) (citing the UCC and stating that the economic loss doctrine is "associated with 'transactions in goods,' and not with transactions in services"); *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.,* 410 N.W.2d 312, 315 (Minn. 1987) (explaining that the rationale behind the economic loss rule is that "a recognition of tort actions in cases under the UCC would upset the remedies contained in the UCC")).

The court in *Srok* likewise found that a mortgage loan contract was one for the provision of a product and not primarily for services.  In *Srok*, the plaintiff argued that the economic loss doctrine should not apply as the alleged claims were "in the nature of a service to modify an existing mortgage loan" and the acts of the servicer of the loan "do not constitute a real estate transaction."  *Srok*, 2015 U.S. Dist. LEXIS at *17.  The Court soundly rejected plaintiff's arguments explaining that the "processing of the paperwork for a loan modification is a necessary step to obtaining the modified product–the mortgage loan" just as the initial application for the loan "does not transform the mortgage contract into a contract for services" neither does the processing of paperwork for a loan modification.  *Id.* at 17-18.

Just as with *Zimmerman* and *Srok*, the Mortgage and the Loan Modification Agreement are contracts for products and not services that the UCC would govern under its applicable terms including but not limited to Article 9 (secured transactions) and Article 3 (negotiable instruments). Therefore, the economic loss doctrine recognized in Wisconsin applies and bars Plaintiff's attempted recovery under tort theories.

For this reason as well, the Court should dismiss with prejudice Plaintiff's claims for: (1) IIED (Count VI); (2) Fraudulent Misrepresentation (Count VII); and (3) Wrongful Death (Count X).

## I.     Plaintiff's Breach of Contract Claim (Count I) Fails Because the Plaintiff Does Not and Cannot Allege the Existence of an Enforceable Contract.

For his breach of contract claim, Plaintiff alleges in conclusory fashion that the TPP and Loan Modification Agreement were valid and enforceable contracts. *See* FAC at ¶¶ 131-143. Plaintiff claims that Shellpoint and Trustee purportedly breached the terms of these contracts by failing to honor the Loan Modification Agreement. *Id.* at ¶ 141. These claims fail as a matter of law because: (1) the Plaintiff fails to allege that the Borrowers performed under the terms of the TPP Offer Letter; (2) the TPP Offer Letter was not binding and enforceable against Shellpoint and Trustee; and (3) the terms of the Loan Modification Agreement make it clear that this was merely a provisional willingness to enter into a contract.

To successfully plead a breach of contract claim in Wisconsin, the plaintiff must allege: (1) the existence of an enforceable contract; (2) a breach; and (3) damages. *See e.g., Tietjen v. Ninneman,* Case No. 16-cv-1542, 2017 U.S. Dist. LEXIS 222308, * 12-13 (E.D. Wis. Sept. 29, 2017) (citing *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.,* 2006 WI App 39, ¶ 11, 714 N.W.2d 582, 588)). It is axiomatic that "agreements to agree" are not enforceable contracts. *See e.g., United States v. Shah,* 193 F.Supp.2d 1091, 1095 n. 4 (E.D. Wis. 2002) (citing *Lambert*

*Corp. v. Evans,* 575 F.2d 132, 135 (7th Cir. 1978) ("Even if parties agree, point by point, on all the terms of a contract, if they understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed."). Plaintiff's claims in Count I fail at the outset because no enforceable contract ever arose between Plaintiff and Shellpoint or Trustee.

First, Plaintiff fails to allege that they even accepted the TPP extended by Specialized pursuant to the terms of the TPP Offer Letter. As noted above, the TPP Offer Letter required that to accept the offer for a TPP, the Borrowers "**must** make the first monthly 'trial period payment' by" February 1, 2019. *See* TPP Offer Letter (Ex. 2) (emphasis added), FAC at ¶ 26.

However, Plaintiff does not allege that the Borrowers made the first trial payment no later than February 1, 2019, and instead, merely alleges that "[i]n February 2019, the Miners made the first trial payment in the amount of $704.75." *See* FAC at ¶ 27. This is clearly insufficient, as the terms of the TPP Offer Letter explicitly mandated receipt of the first payment under the TPP no later than February 1, 2019. By failing to allege that the Borrowers complied with the terms of the offer, Plaintiff cannot then allege a breach against Shellpoint or Trustee. *See, Golden Dipt. Co., Div. of DCA Food Industries, Inc. v. Systems Engineering & Mfg. Co.,* 465 F.2d 215, 216 (7th Cir. 1972) ("an offeror may, by the terms of his offer, restrict the mode of acceptance.").

Second, Plaintiff's attempts to enforce the terms of the TPP against Shellpoint and Trustee fail because by Specialized made these offers. Consequently, to the extent that the TPP Offer Letter constituted a binding offer and assuming the Borrowers accepted the offer pursuant to its terms, that agreement is solely enforceable against Specialized. The TPP Offer Letter neither mentions nor references either Shellpoint or Trustee, and neither Shellpoint nor Trustee

offered the TPP. The Complaint merely provides conclusory allegations as to why Shellpoint or Trustee are bound by the agreement offered by SLS, and this is insufficient to survive a motion to dismiss. *See* FAC at ¶¶ 135-138.

This is especially true as this claim pertains to Shellpoint, because as a mortgage servicer it is not even a party to the underlying Mortgage or Loan. *See, Bonfiglio v. Citifinancial Servicing, LLC*, Case No. 14 C 9254, 2015 U.S. Dist. LEXIS 128215, *21 (N.D. Ill. Sept. 23, 2015) (noting that "courts in other jurisdictions have not approved breach of contract claims against loan servicers when those servicers were not parties to the contract.") (citing *Cannon v. Wells Fargo Bank, N.A.,* 917 F.Supp.2d 1025, 1052 (N.D. Cal. 2013)); *Cohen v. Mortgage Elec. Registration Sys. Inc.,* Case No. 08-1394, 2009 U.S. Dist. LEXIS 111188, *14-16 (D. Minn. Dec. 1, 2009); *Trunzo v. Citi Mortg.,* 876 F.Supp.2d 521, 533 (W.D. Pa. 2012); *DiGiacomo v. Statebridge Co., LLC,* Case No. 14-6694, 2015 U.S. Dist. LEXIS 82496, *22 (D.N.J. June 25, 2015) ("a loan servicer is not an original party to a mortgage agreement between a lender and a borrower as a matter of law."); *Petty v. Countrywide Home Loans, Ins.,* Case No. 12-6677, 2013 U.S. Dist. LEXIS 62042, *27 (W.D. Va. May 1, 2013) (collecting cases). For this reason as well, the Plaintiff's breach of contract claim against Shellpoint and Trustee should be dismissed with prejudice.

Finally, Plaintiff's breach of contract claim fails because under the controlling Seventh Circuit law, the Loan Modification Agreement and TPP Offer Letter were not enforceable contracts because Shellpoint never provided a counter-signed copy of the Loan Modification Agreement.

The Seventh Circuit has determined that in certain cases a TPP offer can give rise to an enforceable contract (*see e.g., Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 560-61 (7th Cir.

2012)), but where, as here, the offer for modification also required that the lender counter-sign the modification paperwork and this step was never completed, no enforceable contract arose. *See, Taylor v. JPMorgan Chase Bank, N.A.,* 958 F.3d 556 (7th Cir. 2020); *see also, Tyler v. Bank of N.Y. Mellon*, Case No. 19-cv-7863, 2020 U.S. Dist. LEXIS 91267, * 31 (N.D. Ill. May 26, 2020); *Golbeck v. Johnson Blumberg & Assocs., LLC*, Case No. 16-cv-6788, 2017 U.S. Dist. LEXIS 112493, *20 n. 3 (N.D. Ill. July 19, 2017) (collecting cases).

As explained by the Seventh Circuit in *Taylor*, the requirement that the lender countersign the modification documents creates a condition precedent, the failure of which precludes the creation of an enforceable agreement. *Taylor* at 958 F.3d at 562-564. In *Taylor*, the TPP stated that the trial modification would "not take effect unless and until both [borrower] and [servicer] sign it and [servicer] provides [borrower] with a copy this Plan with [servicer's] signature. And if [servicer] did 'not provide [borrower] a fully executed copy of this Plan and the Modification Agreement,' then "the Loan Documents will not be modified, and this Plan will terminate." *Id.* at 563.

Similar to *Taylor*, the Loan Modification Agreement provides, as a precondition to modification, that the Loan "will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to [the Borrower]." *See* Ex. 2 at § 2(B). As alleged by the Plaintiff, Shellpoint never countersigned the Loan Modification Agreement. *See* FAC at ¶¶ 76-77.

Importantly, by executing the Loan Modification Agreement, the Borrowers understood and acknowledged that the Loan Modification Agreement "shall supersede the terms of any modification, forbearance, trial period plan or other workout plan." *See* Ex. 2 at § 4(B). Thus, the requirements and preconditions of the Loan Modification Agreement control over any

potentially conflicting terms contained in the TPP. Here, Plaintiff's cannot enforce the Loan Modification Agreement because Shellpoint did not countersign it, as required.

Accordingly, this Court should dismiss Plaintiff's claim for breach of contract with prejudice.

## II.    Plaintiff's Breach of Duty of Good Faith and Fair Dealing Claim (Count II) Should be Dismissed.

"The duty of good faith arises because parties to a contract, once executed, have entered into a <u>cooperative relationship</u> and have abandoned the wariness that accompanied their contract negotiations, adopting some measure of trust of the other party." *Metro. Ventures, LLC v. GEA Assocs.,* 2006 WI 71, ¶ 36, 717 N.W.2d 58 (Wis. 2006) (emphasis in original). The duty "prevents parties to a contract from 'intentionally and purposely doing anything to prevent the other party from carrying out his or her part of the agreement.'" *Non Typical Inc. v. Transglobal Logistics Group Inc.,* Case No. 10-cv-1058, 2011 U.S. Dist. LEXIS 50597, *15 (E.D. Wis. May 11, 2011) (quoting *Tang v. C.A.R.S. Prot. Plus, Inc.,* 2007 WI App 134, ¶ 41, 734 N.W.2d 169, 183) (Wis. App. 2007)).

As explained above, Plaintiff's claim for Good Faith and Fair Dealing fails because the TPP Offer Letter and Loan Modification Agreement were not enforceable agreements against Shellpoint and Trustee. As such, Plaintiff cannot enforce any duty of good faith and fair dealing for a contract that was never fully executed.

Moreover, Plaintiff does not allege that Shellpoint or Trustee took any steps to thwart the ability of the Borrowers to comply with either the Loan Modification Agreement, the TPP Offer Letter, or the Mortgage. Instead, as indicated above, the countersigning of the Loan Modification Agreement was a precondition entirely within the discretion of Shellpoint. Importantly, Plaintiff acknowledges that the Borrowers defaulted on the Loan long before the

service transfer to Shellpoint, and he does not allege or claim that any party caused the Borrowers' initial default on the Loan. *See* FAC at ¶ 17. Therefore, the Court should dismiss with prejudice Count II of the FAC as well.

### III.    Plaintiff's Unjust Enrichment (Count III) Claim Should be Dismissed.

"To state a claim for unjust enrichment in Wisconsin, a plaintiff must show that: (1) plaintiff conferred a benefit on the defendant, (2) the defendant appreciated or knew of the benefit, and (3) the defendant accepted or retained the benefit under circumstances making retention of the benefit inequitable without payment." *Martin Elecs. USA, Inc.,* Case No. 14-cv-83, 2015 U.S. Dist. LEXIS 42016, *19 (W.D. Wis. Mar. 31, 2015) (citing *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978)). However, a plaintiff may bring a claim for unjust enrichment "only in the absence of an enforceable contract." *Id.* (citing *Carroll v. Stryker Corp.,* 658 F.3d 675, 682 (7th Cir. 2011)).

The Plaintiff's claim for unjust enrichment (asserted against Trustee, but not Shellpoint) fails for the simple additional reason that the Mortgage specifically allows for the mortgagee to impose and collect various fees and costs, to foreclose on the Subject Property, and provides for the repayment of the Loan. *See* Ex. 1 at § 1 (late charges), § 2 (late charges), § 14 (default related fees and expenses), and § 19 (default related fees and expenses).

Because the Plaintiff does not dispute the validity and enforceability of the Mortgage, his claims for unjust enrichment against the Trustee are without merit and should be dismissed with prejudice.

### IV.    Plaintiff's Violation of the Wisconsin Deceptive Trade Practices Act (Count IV) Claim Should Be Dismissed.

Plaintiff alleges that Shellpoint and Trustee violated the WDTPA by deceptively inducing the Borrowers into making the TPP payments without the intention of honoring the Loan Modification Agreement. *See* FAC at ¶¶ 168-169.

To prevail on a claim under the WDTPA, a plaintiff must prove that: "(1) the defendant made a representation to the 'public' with the intent to induce an obligation; (2) the representation was 'untrue, deceptive or misleading' and (3) the representation materially caused a pecuniary loss to the plaintiff.'" *Zimmerman v. Logemann,* Case No. 09-cv-210, 2011 U.S. Dist. LEXIS 52354, * 33 (W.D. Wis. Mar. 17, 2011).

For purposes of the WDTPA, an individual plaintiff may under certain circumstances be considered a member of the public. *Id.; see also, Fricano v. Bank of Amer. N.A.,* 2016 WI App. 11, ¶ 28, 875 N.W.2d 143 (Wis. App. 2016). However, "a plaintiff is no longer a member of 'the public' for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into contract to purchase the offered item." *See, K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.,* 2007 WI 70, ¶ 26, 732 N.W.2d 792 (Wis. 2007). Put another way, once a "particular relationship exists between the plaintiff and the defendant the individual is no longer a member of the public." *Fricano,* 2016 WI App. at ¶ 28 (quoting *K&S Tool*). The determination as to whether or not a party is a member of the "public" under the WDTPA depends "upon its own peculiar facts and circumstances and must be tested by the statute in the light of such facts and circumstances." *K&S Tool*, at ¶ 27.

Here, Plaintiff's claim for an alleged violation of the WDTPA by Shellpoint or the Trustee fails as a matter of law because the Borrowers were not members of the "public" due to the pre-existing contractual relationship between the parties (*i.e.* the Mortgage). *See* FAC at ¶¶ 11-14, 42. The TPP Offer Letter was not a general advertisement to the "public," but instead, it

was a personalized offer that Specialized extended to the Borrowers for a potential path towards modifying the pre-existing Loan contract. For this reason alone, the Borrowers' claimed violation of the WDTPA fails and should be dismissed with prejudice.

Further, Plaintiff's claim for a violation of the WDTPA fails as to Trustee and Shellpoint because Plaintiff does not claim that either of these defendants enticed, solicited, or offered the Borrowers the TPP. Instead, and as stated in the Complaint, Specialized extended the TPP offer to the Borrowers. Therefore, Plaintiff does not allege in the Complaint that Trustee or Shellpoint made any representations with regards to the TPP offer with the intent that they further obligate themselves, and for this reason as well, Plaintiff's claims for a violation of the WDTPA as to Trustee and Shellpoint fails as a matter of law and should be dismissed with prejudice.

## V. Plaintiff's Violation of the TILA Claim (Count V) Should be Dismissed.

For his TILA claim, Plaintiff alleges that Shellpoint violated §1639f of TILA and §1026.36(c)(1)(i) of TILA's promulgating regulations, 12 C.F.R. § 1026, *et seq.* ("Regulation Z") by rejecting the Borrowers' mortgage payments. *See* FAC at ¶¶ 189-192.

However, Plaintiff does not – and cannot - actually allege that the Borrowers remitted any payments to Shellpoint, and instead, Plaintiff only alleges that on June 22, 2019, "Tiffany was informed that Shellpoint would not be accepting payment unless the payment was sufficient to pay the erroneous default amount..." *See* FAC at ¶¶ 62-63. The provisions of TILA and Regulation Z plainly do not apply to the circumstances alleged by Plaintiff. Plaintiff does not allege any facts against or including Trustee in his purported claims alleging a violation of TILA.

Section 1639f of TILA states that: "no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer

reporting agency." 12 U.S.C. § 1639f. Similarly, Section 1026.36(c)(1)(i) of Regulation Z provides: "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt ..." 12 C.F.R. § 1026.36(c).

Initially, Plaintiff's TILA claim fails as to Shellpoint because Plaintiff does not allege that the Borrowers made any payments on the Loan to Shellpoint, and consequently, Shellpoint could not have violated TILA as it did not receive any periodic payments from the Borrowers. *See* FAC at ¶¶ 62-63. For this reason alone, Plaintiff's claim for a violation of TILA fails as a matter of law.

Additionally, Plaintiff's TILA claim fails as to Shellpoint because it is well-settled law in the Seventh Circuit that servicers of mortgage loans, like Shellpoint here, cannot be liable for alleged violations of TILA. Specifically, servicers are not liable because they are not "creditors" as defined by that statute. Section 1640 of TILA provides civil liability for "any creditor who fails to comply with any requirement imposed under this chapter." 15 U.S.C. § 1640(a); *see also, Dawoudi v. Nationstar Mortg. LLC.,* 448 F.Supp.3d 918, 928 (N.D. Ill. 2020) ("Because it remains settled that TILA liability does not extend to loan servicers [] this Court dismisses [Plaintiff's Section 1639g claim].") (citing *Iroanyah v. Bank of Am.,* 753 F.3d 686, 688 n.2 (7th Cir. 2014); *Mathers v. HSBS Bank,* No. 16-c-9572, 2018 WL 3831529, *2 (N.D. Ill. Aug. 13, 2018); *Knopp v. Wells Fargo Bank, N.A.,* No. 16-c-2330, 2017 U.S. Dist. LEXIS 116555, *6 (N.D.Ill. Jan. 25, 2017)); *see also, Garcia v. HSBC USA, N.A.,* Case No. 19-cv-1369, 2009 U.S. Dist. LEXIS 114299 (N.D. Ill. Dec. 7, 2009). Plaintiff's TILA claim against Shellpoint fails for this reason as well.

Finally, Plaintiff's claims under TILA fail for the additional reason that they are also time-barred by the applicable 1-year statute of limitation. *See* 15 U.S.C. § 1640(e). Plaintiff

filed his Complaint on January 25, 2021. As noted above, the sole allegation concerning attempted payments to Shellpoint allegedly occurred in June of 2019, and therefore, Plaintiff needed to file his claim alleging a violation of TILA no later than June of 2020. He did not timely file any such claim.

For all these reasons, this Court should dismiss Plaintiff's TILA claim with prejudice.

## VI. Plaintiff's Intentional Infliction of Emotional Distress Claim (Count VI) Should be Dismissed.

Under Wisconsin law, to recover damages for an IIED claim, a "plaintiff must establish that: (1) 'the defendant's conduct was intentional; that is to say, the defendant behaved as it did for the purpose of causing emotional distress for the plaintiff'; (2) the defendant's conduct was 'extreme and outrageous'; (3) 'the defendant's conduct was a cause-in-fact of the plaintiff's injury'; and (4) the plaintiff suffered 'an extreme disabling emotional response to the defendant's conduct.'" *Woltring v. Specialized Loan Servicing LLC*, 56 F.Supp.3d 947, 952 (E.D. Wis. 2014) (quoting *Alsteen v. Gehl,* 124 N.W.2d 312, 318 (Wis. 1963)).

In addition to the bar under the economic loss doctrine, Plaintiff's claim for IIED fails because the alleged conduct does not rise to the level of "extreme and outrageous." Instead, Plaintiff merely alleges that Shellpoint and Trustee refused to tender and implement the Loan Modification Agreement–nothing more. Every allegation of purported wrong doing arises solely from the refusal and denial of Shellpoint to implement the Loan Modification Agreement, including the Foreclosure Case, and there is nothing "extreme or outrageous" about a lien holder proceeding to foreclosure against a borrower who is admittedly in default. *See e.g. Taylor*, 958 F.3d at 566-67 (applying Indiana law on IIED in determining that the alleged failure to process a loan modification in good faith did not arise to "extreme and outrageous" conduct); *see also, Hukic v. Aurora Loan Servs. LLC,* 588 F.3d 420, 438-39 (7th Cir. 2009) (applying Illinois law in

determining that loan servicers alleged failure to apply payments and report loan in default to credit reporting agencies did not rise to the standard of "extreme and outrageous" conduct).

To the extent Plaintiff separately alleges a claim for negligent infliction of emotional distress ("negligent IED"), it too fails as a matter of law. *See* FAC at ¶ 199. "Plaintiffs suing for negligent infliction of emotional distress under Wisconsin law must prove the same elements as any other negligence claim." *Liebhart v. SPX Corp.*, 2017 U.S. Dist. LEXIS 181414, at * 14 (W.D. Wis. 2017) (applying state law).

To allege a claim for negligent infliction of emotional distress, the plaintiff must allege the following elements: "(1) that the defendant's conduct fell below the applicable standard of care; (2) that the plaintiff suffered an injury; and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury." *Spivey-Johnson v. SM&P Util. Res., Inc.*, 2007 U.S. Dist. LEXIS 1814, at * 8 (E.D. Wis. 2007) (applying state law).

Initially, Plaintiff's negligent IED is barred by the economic loss doctrine, as discussed above. Plaintiff's negligent IED claim fails for this reason alone. *See e.g.*, *Maryland Staffing Servs. v. Manpower, Inc.*, 936 F.Supp. 1494, 1509 (E.D. Wis. 1996) ("Accordingly, the Court concludes that the plaintiffs' negligence claim is barred by the 'economic loss' doctrine.").

Moreover, Plaintiff's negligent IED claim separately fails because Plaintiff has not—and cannot—allege Defendants owed Plaintiff a duty of care, as required. Wisconsin courts have held that where an alleged tort is related to a contract, a cause of action in tort requires that "a duty must exist independently of the performance of the contract." *Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 473, 545 N.W.2d 843 (Wis. Ct. App. 1996).

Because Plaintiff cannot allege a duty of care independent from the Mortgage or the Loan Modification Agreement, his negligent IED claim fails as a matter of law. *See e.g.*, *Pulsifer v.*

*U.S. Bank N.A. (Pulsifer)*, 2014 U.S. Dist. LEXIS 133532, at * 14 (E.D. Wis. 2014) ("[C]reditors do not owe a duty of care to debtors, and for the reasons stated above, such a duty cannot be imported from the HAMP guidelines.").

Accordingly, the Court should dismiss Plaintiff's IIED claim against Trustee and Shellpoint with prejudice and without leave to amend.

## VII. Plaintiff's Fraudulent Misrepresentation Claim (Count VII) Should be Dismissed.

To support a claim of Fraudulent Misrepresentation (also known as intentional misrepresentation or common law fraud) a plaintiff must allege: "(1) the defendant made a factual representation; (2) which was true; (3) the defendant either made the representation knowing it was untrue or made recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." *Kaloti Enters. v. Kellogg Sales Co.,* 2005 WI 111, ¶ 12, 699 N.W.2d 205 (quoting *Ramsden v. Farm Credit Services of North Central Wisconsin ACA*, 223 Wis.2d 704, 718-19, 590 N.W.2d 1 (Ct. App. 1998)).

Here, Plaintiff's claim for Fraudulent Misrepresentation fails because Shellpoint and Trustee did not provide Borrowers with the TPP Offer Letter – Specialized did. And, in fact, the Plaintiff alleges that the Borrowers tendered all the payments required under the TPP Offer Letter before the service transfer to Shellpoint. Put another way, Plaintiff does not allege that either Shellpoint or Trustee made any representations of fact to the Borrowers which they relied upon to their detriment. Instead, Plaintiff argues that the Borrowers had fully complied with the terms of the TPP Offer Letter before the service transfer to Shellpoint, and thus, Borrowers simply could not have relied upon any representations of Shellpoint or Trustee in attempting to

modify their Loan through the TPP that Specialized offered them. Importantly, as noted above, Plaintiff was fully aware of his purported claims when he voluntarily paid off the Loan in May of 2020, and consequently, he also did not rely upon any statements made on behalf of Trustee or Shellpoint as to the full payoff amounts due on the Loan at that time.

Also, as stated above, the economic loss doctrine bars Plaintiff's claim for fraudulent misrepresentation. The Wisconsin Supreme Court has determined that a "narrow" exception exists to the economic loss doctrine for claims of "fraud in inducement" where "the failure of a party to a business transaction to disclose a fact serves as the basis for a fraudulent inducement to contract claim, a plaintiff must show that: (1) there was an intentional misrepresentation, the five elements of which are set out above; (2) the misrepresentation occurred before the contract was formed [citation omitted]; and (3) 'the fraud [was] extraneous to, rather than interwoven with, the contract.'" *Kalolti*, 2005 WI at ¶ 42 (*Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶52, 662 N.W.2d 652 (Wis. 2003)).

Here, the Wisconsin Supreme Court's exception to the economic loss doctrine does not apply because Shellpoint and Trustee did nothing to induce the Plaintiff to remit payments under the TPP. Additionally, the Plaintiff's claim concerning the purported fraudulent misrepresentation are integral to and, in fact, interwoven with the very terms of the Loan Modification Agreement and the TPP Offer Letter. Accordingly, the economic loss doctrine bars Plaintiff's claim for Fraudulent Misrepresentation.

For these reasons, this Court should dismiss Plaintiff's claim for Fraudulent Misrepresentations (Count VII) with prejudice as to Trustee and Shellpoint.

## VIII. Plaintiff's FDCPA Claim (Count VIII) Should Be Dismissed.

As an initial matter, Plaintiff's claims that Shellpoint violated the FDCPA are all premised upon the erroneous theory that the Loan Modification Agreement is an enforceable contract that Shellpoint was required to implement. As detailed above, the TPP Offer Letter and Loan Modification Agreement were not enforceable agreements as to Trustee and Shellpoint. That is, Plaintiff is incorrect that Shellpoint engaged in any improper debt collection activities or misrepresentations concerning the Loan because it was not required to modify the Loan and the Plaintiff admits that the Borrowers were in default on the Loan. Thus, the Plaintiff's claims for a violation of the FDCPA fail for the same reasons that his breach of contract claim fails.

"The FDCPA generally prohibits 'debt collectors' from engaging in abusive, deceptive, or unfair debt-collection practices." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). For the FDCPA to apply, two threshold criteria must be met: (1) the defendant must qualify as a "debt collector,"[1] and (2) the communication by the debt collector that forms the basis of the suit must have been made in connection with the collection of any debt. *Id.* (citing 15 U.S.C. §§ 1692c(a)-(b), 1692e, 1692d).

First, Plaintiff's FDCPA claim against Shellpoint fails for the additional reason that the FDCPA's one-year statute of limitation bars most of the purported wrongful acts. *See* 15 U.S.C. § 1692k(d). The court looks to the "specific violations alleged" when determining the "date on which the violation occurs." *See Lockhart v. HSBC Fin. Corp.*, 2014 U.S. Dist. LEXIS 1050866, at *31 (N.D. Ill. Aug. 1, 2014); *see also, Woltring v. Specialized Loan Servicing LLC,* Case No. 14-cv-222, 2014 U.S. Dist. LEXIS 81433, *14 (E.D. Wis. June 16, 2014). When considering a collections lawsuit – like the Foreclosure Case – courts have repeatedly determined that the "the

---

[1] Solely for the purposes of this Motion, Shellpoint is not contesting that the Plaintiff adequately alleged that Shellpoint qualifies as a "debt collector" in the Complaint. However, Shellpoint reserves the right to contest this allegation and demand strict proof by Plaintiff to support this claim if litigation proceeds on his FDCPA claim against Shellpoint. Plaintiff does not and cannot allege a claim for violation of the FDCPA against Trustee, because Trustee is not a "debt collector" under the FDCPA.

clock starts to run when the allegedly wrongful litigation begins." *See Id.* (citing *Judy v. Blatt,*

*Hasenmiller, Leibsker & Moore, LLC*, 2010 U.S. Dist. LEXIS 8027, at *3 (N.D. Ill. Jan. 29

2010); *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002); *Naas v. Stolman*, 130 F.3d 892,

893 (9th Cir. 1997)); *see also, McDermott v. Barton,* Case No. 14-cv-704, 2014 U.S. Dist.

LEXIS 165656, *9 (S.D. Ill. Nov. 26, 2014); *Gajewski v. Ocwen Loan Servicing, LLC,* Case No.

14-cv-9230, 2015 U.S. Dist. LEXIS 83094 *10 (N.D. Ill. June 25, 2015).

Here, Plaintiff filed his Complaint on January 25, 2021, and any act or omission which

occurred before January 25, 2020 cannot form the basis of his claims for a violation of the

FDCPA as they are time barred. These purported wrongful acts would include: (1) the filing of

the Foreclosure Case by Johnson Blumberg and any subsequent related activity (November 27,

2019 (*see* FAC at ¶ 87); (2) mortgage statements dated November 18, 2019 (*id.*, at ¶ 86) and

June 22, 2019 (*id.*, at ¶ 61); (3) default correspondence dated July 19, 2019 (*id.*, at ¶ 66); (4)

"welcome letter" dated June 17, 2019 (*id*., at ¶ 59); (5) "rejecting" Borrowers' attempted

payment in June and July of 2019 (*id.,* at ¶¶ 50, 62); and (6) refusing to implement the Loan

Modification Agreement "between September 2019 and November 2019" (*id.*, at ¶ 84). Notably,

the Plaintiff pleads his claims for violations of the FDCPA in such a vague and broad manner

that all of his alleged claims are affected by the statute of limitation, and this Court should

dismiss his claims for this reason alone.

Indeed, Plaintiff appears to allege only one instance of a purported violation by

Shellpoint which falls within the applicable 1-year statute of limitations. Plaintiff alleges that

Shellpoint violated Sections 1692e, 1692f and 1692c(a)(2) of the FDCPA by mailing the

Borrowers a mortgage statement dated March 19, 2020. *See* FAC at ¶¶ 97-98, 221, 232.

However, any claimed violation of the FDCPA based upon the March 19, 2020 mortgage statement fails for additional reasons.

First, the March 19, 2020 mortgage statement does not constitute a communication "made in connection with the collection of [the] debt." As noted by the Seventh Circuit, the FDCPA does not extend to "every communication between a debt collector and a debtor." *See Gburek,* 614 F.3d at 384-85. The court in *Gburek* developed a multi-factor analysis to determine whether a specific communication is "made in connection with the collection of any debt." *See id.,* at 384. Instead of being a communication made in connection with the collection of the Loan, the mortgage statement was sent in accordance with the requirements and forms provided under TILA and Regulation Z. *See e.g., Jones v. Select Portfolio Servicing, Inc.,* Case No. 18-cv-20389, 2018 U.S. Dist. LEXIS 75886, *7-8 (S.D.Fla. May 2, 2018); *Douzable v. Newrez*, Case No. 19-61203, 2019 U.S. Dist. LEXIS 231328, *9-10 (S.D. Fla. Oct. 9, 2019); *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 587 (D.N.J. 2016).

As explained by the court in *Jones*, mortgage servicers, such as Shellpoint here, are required under TILA and Regulation Z to "provide debtors with monthly statements." *Jones*, at *6-7 (citing 12 C.F.R. § 1026.41)). As a result of this requirement, servicers run the potential of violating the FDCPA, in certain circumstances, by attempting to comply with the requirements of TILA and Regulation Z. In an attempt to resolve this conflict, the Consumer Financial Protection Bureau "issued a bulletin expressly stating that a 'servicer acting as a debt collector would not be liable under the FDPA for complying with these [TILA monthly mortgage statement] requirements.'" *Jones*, at *7 (quoting Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013)). Because Shellpoint sent the March 19, 2020 mortgage statement at issue in the Complaint

pursuant to the requirements of TILA and Regulation Z, it was not an attempt to collect a debt and Shellpoint should not be held liable for any alleged violation of the FDCPA.

Second, the March 19, 2020 mortgage statement alone does not rise to the level of harassment, oppression or abuse required for a violation of Section 1692d. *See e.g., Leahy-Fernandez v. Bayview Loan Servicing, LLC,* 159 F.Supp. 35 1294, 1305 (M.D. Fla. 2016) (merely sending monthly statements does not constitute harassment); *McElvy v. Nationstar Mortg., Inc.,* Case No. 13-cv-377, 2014 U.S. Dist. LEXIS 189563, *6 (E.D. Va. Mar. 10, 2014) (same); *Stegall v. SN Servicing Corp.,* Case No. 16-2122, 2017 U.S. Dist. LEXIS 35201, *14 (E.D. Pa. Mar. 13, 2017) (same). Simply put, it is not harassment, oppression or abusive to provide a borrower with an informative statement concerning the status of their mortgage loan. Plaintiff does not allege that the March 19, 2020 mortgage statement contained any additional threatening or abusive language, and this Court should deem these allegations insufficient to support any claim for a violation of Section 1692d.

Accordingly, this Court should dismiss the Plaintiff's claims for violations of the FDCPA with prejudice.

## IX. Plaintiff's Wrongful Death (Count X) Claim Should be Dismissed.

A wrongful death claim is "a statutory cause of action usually brought by the personal representative of the deceased person or family members for injuries suffered post-death." *Soto v. Gibbons*, Case No. 14-cv-234, 2017 U.S. Dist. LEXIS 36794, *11 (W.D. Wis. Mar. 15, 2017) (citing *Bartholomew v. Wisconsin Patients Comp. Fund & Compcare Health Servs. Ins. Corp.,* 2006 WI 91, ¶ 55, 717 N.W.2d 216)); *see also,* Wis. Stat. § 895.03.

Notably, the Court in *Soto* also determined that summary judgment was appropriate on the plaintiff's wrongful death claim because the record failed to demonstrate any connection

between the decedent's heart attack and the purported wrongful actions of the defendants. Instead, the plaintiff presented merely speculation as to some connection between the two events which was insufficient to survive summary judgment. *Soto*, 2017 U.S. Dist. LEXIS at *14-15. While the untimely death of Mrs. Miner is tragic, the conclusory and speculative allegations in the Complaint that her death was the result of the alleged failure of the defendants to implement a loan modification defies any reasonable expectations.

Nonetheless, Plaintiff's wrongful death claim in this matter fails along with his other tort-based claims because it is barred by the economic loss doctrine. Importantly, the Supreme Court of Wisconsin recognized that a wrongful death claim may arise under a contract-based claim only under extremely limited circumstances that are not present here. *See Schnable v. Ford Motor Co.,* 195 N.W.2d 602, 606-610 (Wis. 1972). In *Schnable*, the Court recognized that a wrongful death claim may proceed for a claim of breach of an implied warranty due to the hazardous nature of a product. *Id.* at 609. The Wisconsin Supreme Court later clarified the ruling in *Schnable* to further explain that the "breach of implied warranty" exception for wrongful death claims *ex contractu* was in actuality an "action based on strict liability in tort." *See Austin v. Ford Motor Co.,* 273 N.W.2d 233, 240-41 (Wis. 1979).

Here, Plaintiff does not allege any facts or claims which could possibly be construed as a breach of implied warranty or an action for strict liability. Consequently, there is no possible basis on which Plaintiff could premise his wrongful death claim due to the purported failure of the defendants to honor and implement the Loan Modification Agreement. Instead, Plaintiff – at most – alleges some form of claim for breach of contract, and therefore, this Court should dismiss his claim for wrongful death with prejudice.

**X.    Plaintiff's Claimed Violation of Wisconsin Mortgage Banking Act (Count X) Should be Dismissed.**

Similar to the FDCPA, Wisconsin's Mortgage Banking Act ("WBA") covers mortgage bankers, loan originators, and mortgage brokers that make loans for personal, family, or household purposes secured by a mortgage lien on real property.  § 224.71(14).  However, the statute defines a mortgage banker as any person who does any of the following: (c) Originates residential mortgage loans for itself, as payee on the note evidencing the residential mortgage loan, or for another person; (d) Sells residential mortgage loans or interests in residential mortgage loans to another person; (e) Services residential mortgage loans or provides escrow services. § 224.71(3).  Plaintiff does not and cannot allege that Trustee originated or sold this mortgage loan.  *See* FAC at ¶ 11.  As such, the WBA does not apply to Trustee meaning Plaintiff's WBA violation claim as to Trustee must be dismissed with prejudice.

Plaintiff's WBA claim separately fails because it does not meet the pleading standard required by Fed. R. Civ. P. 12(b)(6).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do..."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Specifically, Plaintiff's FAC, in bare bones fashion, merely lays out the supposed elements supporting a WBA violation claim followed by generally alleging that unspecified Defendants "through their own actions…engaged in the above-described conduct in a manner that harmed Plaintiff."  *See* FAC ¶¶ 269-273.  Plaintiff's allegations supporting his WBA violation claim fall well short of the *Twombly* pleading standard, and thus his WBA violation claim fails as a matter of law.  *See e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

Moreover, the WBA only provides a private right of action for any "aggrieved" party meaning the plaintiff must show some actual economic damage. § 224.80(2). *See e.g., Avudria v. McGlone Mortg. Co*., 2011 WI App 95 (Wis. Ct. App. 2011) (affirming grant of summary judgment to defendant where plaintiff suffered no actual injury); *Green Tree Servicing, LLC v. Lorang*, 367 Wis. 2d 350, 2016 WI App 18, 876 N.W.2d 179 (Wis. Ct. App. 2016) (same); *US Bank N.A. v. Tellock*, 2020 Wisc. App. LEXIS 538 (Wis. Ct. App. Nov. 17, 2020) (Actual damages under the statute do not include emotional distress).

Here, Plaintiff admittedly paid off the Loan and fails to allege any actual economic damage proximately caused by any supposed lack of compliance with the WBA. Plaintiffs claim against Trustee and Shellpoint fails for this reason too.

Accordingly, for all these reasons this Court must the Plaintiff's claims in Count X with prejudice.

WHEREFORE, Shellpoint and Trustee respectfully request that the Court enter an order dismissing the Complaint in its entirety and with prejudice as to Trustee and Shellpoint and providing any further and additional relief as it deems necessary and appropriate.

Dated: July 7, 2021

Respectfully submitted,

**NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING and 1900 CAPITAL TRUST III, BY U.S. BANK TRUST N.A., AS CERTIFICATE TRUSTEE A/K/A MCM CAPITAL, LLC,**

Donald S. Maurice
Maurice Wutscher LLP
105 W. Madison Street, Suite 603

Chicago, IL 60602
Tel.  (312) 416-6170
Fax  (312) 284-4751
Email: Litigation@mauricewutscher.com

By:    /s/  Donald S. Maurice
       Donald S. Maurice

## Certificate of Service

I hereby certify that on **July 7, 2021**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all registered parties.


/s/  Donald S. Maurice